These appeals are from judgments for the defendants in two cases which were consolidated for trial. The plaintiffs, Jim Walter Homes, Inc., and Mid-States Homes, Inc., sought reformation of certain instruments of title on the ground of mutual mistake. After a hearing ore tenus, the trial court denied the relief prayed for and plaintiffs appealed. We affirm.
It appears that the two sets of defendants, Willie Joe Fleeton and his wife Mary Fleeton, and Joe Fleeton and his wife Lucy Fleeton, dealt with Jim Walter Homes whereby Jim Walter Homes was to build each couple a house. Each set of defendants sought to obtain a tract of land for that purpose from Thomas Phifer, Lucy Fleeton's son by her former marriage to Thomas Samuel Phifer and the sole heir of Thomas Samuel Phifer.[1] By a warranty deed dated December 26, 1968, Phifer and his wife deeded to Joe and Lucy Fleeton: *Page 1242 
 "The north twelve acres of W 1/2 of the SE 1/4 of the NE 1/4 of Sec. 9, Twp. 14, Rge. 16, less 2 acres in a square in the northeast corner owned by Jackson Friendly. Containing 10 acres, all in Lowndes County, Alabama."
On the same date Lucy and Joe Fleeton executed a mortgage on the same described real property in favor of Jim Walter Homes as mortgagee. This mortgage was assigned by Jim Walter Homes to Mid-State Homes on January 6, 1969.
Insofar as Willie Joe Fleeton and Mary Fleeton are concerned, Willie Joe and Thomas Phifer are half-brothers. Thomas Phifer testified that he had an agreement to deed "over" two acres of land to Willie Joe Fleeton. No deed representing this transaction between Thomas and Willie Joe was admitted into evidence, but Thomas testified that he did not claim the land where Willie Joe and Mary Fleeton built their house. The evidence does reveal a warranty deed dated April 20, 1972, from Joe Fleeton and his wife Lucy to Willie Joe Fleeton and his wife Mary for the following real property:
 "Begin at a point 792 ft. south of the northwest corner of the SE/4 of the NE/4 of Sec. 9, Twp. 14N, Rge. 16E, Lowndes County, Alabama, thence south 298 ft., thence east 660 ft., thence north 298 ft., thence west 660 ft. to the point of beginning and containing three acres, more or less."
This deed was acknowledged on the same date, April 20. It had been preceded by a mortgage dated April 16, 1972, conveying the same described real estate from Willie Joe Fleeton and Mary Fleeton to Jim Walter Homes as mortgagee, acknowledged by the Fleetons on the same date, April 16. This mortgage was assigned by Jim Walter Homes to Mid-State Homes on May 4, 1972. There is also in evidence an "Agreement For Deed" between Mid-State Homes and Willie Joe and Mary Fleeton dated April 4, 1975, containing the same description referring to three acres, more or less.
Willie Joe and Mary Fleeton defaulted, and upon foreclosure of their mortgage Mid-State Homes became the purchaser, this foreclosure being executed on March 25, 1975, and recorded on April 1, 1975. Joe and Lucy Fleeton also defaulted on their mortgage indebtedness, and Mid-State Homes foreclosed thereon and became the purchaser at the foreclosure sale. The foreclosure deed was executed on January 30, 1979, and recorded on August 1, 1979. Sometime thereafter it was discovered that a mistake in the descriptions contained in the various conveyances had placed the properties in Section 9, whereas, according to plaintiffs, it should have been Section 19.
Plaintiffs then brought these actions to have the instruments reformed on the ground of mutual mistake.[2] The defendants in each action filed an answer containing a general denial and also alleging: "If any mistake was made on the said instrument, it was made solely by the Plaintiff; and Plaintiff is estopped from any claim."
Following the hearing conducted ore tenus, the trial court entered an order denying plaintiffs the relief requested, and this appeal ensued.
Plaintiffs contend inter alia on appeal that the trial court erred in denying relief because, as plaintiffs maintain, the proof was undisputed that all parties intended that the instruments describe the property as being located in Section 19 instead of Section 9.
The initial factual question is, of course, what the parties intended the instruments to express at the time they were executed, Behan v. Friedman, 218 Ala. 513, 119 So. 20 (1928), for a court
 "cannot make a new [instrument] for the parties, nor establish that as a[n] [instrument] between them, which it is supposed they would have made, if they had understood the facts. [Holland Blow Stave Co. v. Barclay, 193 Ala. 200, 206, 69 So. 118 (1915) (citing Pomeroy Eq.Jur. (3rd ed.) § 859)]." *Page 1243 
Indeed, there is a presumption arising from the instrument itself supporting it as the true agreement. Marengo AbstractCo. v. Hooper Co., 174 Ala. 497, 56 So. 580 (1911); 66 Am.Jur.2d Reformation of Instruments § 117 at 643 (1973). The burden is upon the party seeking reformation, therefore, to prove his entitlement to reformation by clear, convincing and satisfactory evidence. Great Atlantic Pacific Tea Co. v.Engel Realty Co., 241 Ala. 236, 2 So.2d 425 (1941). To emphasize that the agreement of the minds at the time of thewriting is most important, this Court has stated in Hammer v.Lange, 174 Ala. 337, 340, 56 So. 573 (1911):
 "`To authorize the reformation of a[n] [instrument] which has been reduced to writing and signed, the proof must be clear, exact, and satisfactory, first, that the writing does not truly express the intention of the parties — that on which their minds had agreed; and, second, what it was the parties intended the writing should express.' . . . `If the proof is uncertain in any material respect, it will be held insufficient; and, while the courts may feel a great wrong has been done, they cannot grant relief by reason of uncertainty.' . . ." (Citations omitted.)
What was the intent of Joe Fleeton and Lucy Fleeton respecting the content of their mortgage instrument to Jim Walter Homes?
According to Lucy Fleeton,[3] her son, Thomas Phifer gave them a deed to two acres. The deed itself conveys ten acres, and was handled by a lawyer (apparently acting for Jim Walter Homes) who had the deed already made out when he brought "the papers out" for them to sign. She learned later that there was some question about the title, and affirmed that her former husband, Thomas Samuel Phifer, had never owned any property in Section 9. At the time she took the deed and mortgage she did not know that the description was incorrect, and she acknowledged that the house had been built where they wanted it, her original idea having been that the two acres, rather than ten acres, surrounding the house would go with the mortgage.
It is clear from Lucy's testimony that the title papers to the property on which her house was built were all prepared by someone representing Jim Walter Homes. She had nothing to do with determining the description used in either the deed or the mortgage. Nor did she have anything to do with the survey of her lot, which was also handled by someone representing Jim Walter Homes. All she did was sign the papers.
Concerning the deed from Lucy and her husband to her son, Willie Joe Fleeton, she testified that the signature purporting to be hers was, in fact, not her signature. She identified her husband's signature but denied that she had signed anything in that transaction.
Mary Fleeton, the wife of Willie Joe Fleeton, testified concerning the execution of their mortgage to Jim Walter Homes. At the time she and her husband executed the mortgage, they were at Lucy's house and all they did was sign the papers. She did not know what the mortgage was. She knew her brother-in-law, Thomas Phifer, had deeded them two acres to have a house built, but she never saw the deed. She acknowledged that their house was built where she wanted it built, but she disclaimed any knowledge about the land or its proper description. She reiterated that all she knew was that someone from Jim Walter Homes brought the papers and, without explanation, told her that she would have to sign them.
In its most persuasive posture for the plaintiff, this evidence does establish a possibility that the parties originally intended the respective deeds and mortgages to convey only two acres, and that located in Section 19. It is equally likely, however, that such an intention was only unilateral, because of the fact that Lucy and Mary Fleeton neither discussed nor read the instruments, which had been drawn by Jim Walter Homes earlier for their signatures. *Page 1244 
One of those instruments, according to Lucy Fleeton, contained her forged signature. Under the exacting requirements for reformation, this evidence fails to clearly establish what the parties agreed upon at the time the instruments were executed. What the evidence establishes is, as this Court stated inFederated Guaranty Life Ins. Co. v. Painter, 360 So.2d 309, 312
(Ala. 1978):
 "what they would have agreed upon had they both considered the terms of the [instrument] at the time it was executed. . . ."
What the evidence does show is that both Lucy Fleeton and Mary Fleeton had no intent on the terms of the conveyances, which neither discussed or read. Indeed, neither gave any thought to the question of the amount of land actually conveyed or to its location until, following foreclosure, surveys were made whose results disagreed with the terms of the deeds. Their later testimony that the houses were built where they desired them to be built falls short of establishing clearly that they had earlier mutually agreed to, or had a meeting of the minds about, the contents of the deeds and mortgages. Lucy's deed for ten acres and Mary's deed for three acres were both drawn by someone representing Jim Walter Homes. Thomas Phifer, the grantor, testified that these deeds were to include only two acres each. Mary's deed, it was later discovered, actually called for four and one-half acres. Thomas also testified that an "S" had been added to his signature on his deed to Lucy Fleeton and her husband.
It is true that a mere mistake or error in drafting an instrument will allow reformation. Fidelity Service Ins. Co. v.A.B. Legg Sons Burial Ins. Co., 274 Ala. 94, 145 So.2d 811
(1962); City of Oneonta v. Sawyer, 244 Ala. 25, 12 So.2d 82
(1943). In this case, however, the discrepancies in the acreages of the two deeds and mortgages (one for ten acres and the other for three acres) when only two acres were supposed to have been conveyed in each transaction, the preparation of the instruments by the security holder, Jim Walter Homes, in advance of execution, the lack of explanation to the grantee-mortgagors, their ignorance of the terms at execution, and the questions raised concerning the validity of the signatures, taken together, support the trial court's action denying reformation. Under this evidence the trial judge was warranted in concluding, as he must have concluded, that the mistakes made were, if anything, unilateral, not mutual.
It follows that the order of the trial court denying reformation must be, and is, affirmed.
AFFIRMED.
MADDOX and SHORES, JJ., concur.
TORBERT, C.J., concurs in the result.
JONES, J., concurs specially.
[1] The facts are somewhat confusing. For example, in the deed from Thomas Phifer he is identified initially as Thomas Samuel Phifer; however, he executed the deed to Joe and Lucy Fleeton as Thomas J. Phifer. His acknowledgement refers to him as Thomas S. Phifer. His testimony established this as his deed, in any case.
[2] Plaintiffs in due course applied to the circuit clerk for entry of defaults, which were granted, and subsequently set aside. No issue is presented here in that aspect of the case.
[3] Neither Joe Fleeton nor Willie Joe Fleeton appeared as a witness.