This is an appeal from a judgment reforming a deed to real property located in Mobile County.
The facts are as follows. In February 1979, Yvonne Vielle, formerly known as Yvonne Vielle Bowers, was the grantee in a deed, executed by Athalie D. Long pursuant to a contract for the sale of real property for $10,000. Long also conveyed the property adjoining Vielle's property to Vielle's mother. Specifically, Long conveyed to Vielle a parcel of land consisting of two lots, which we will refer to as lots one and two.[1] Vielle was actually put in possession of, and claimed to own lots one, two, and three. The land in question here is lot three. Vielle and Long agree that the deed conveyed to Vielle lots one and two; Vielle contends that the deed should be reformed to include a description of lot three. She argues that it was the intent of the parties that Long convey these three lots and that by mutual mistake the deed referred to only lots one and two.
The record reveals that shortly after purchasing the property, Vielle undertook to clear off the property with a tractor and a large mower. After clearing off the property, Vielle installed a septic tank and placed a mobile home and a wooden storage building on the property. Long never *Page 969 
voiced any complaints concerning the improvements made on the property.
Approximately one year after Vielle obtained possession of the subject property, Long received a property tax assessment for the property on which Vielle's mobile home was situated. Long forwarded the assessment to Vielle. Vielle, in turn, went to the courthouse to check on the status of her property taxes. No error in the assessments Vielle had previously received was discovered, nor was there any indication that she was delinquent in the payment of property taxes.
In May 1986, Vielle discovered that Sharon Long, daughter-in-law of Athalie Long and neighbor of Vielle, had recently purchased lot three from the State of Alabama for back taxes owed.
Vielle sued Athalie D. Long, seeking reformation of the deed description so that it would reflect what Vielle contended had been the true intentions of the parties.
The trial court, after hearing testimony, entered an order on March 25, 1988, reforming the deed. That order provided as follows:
 "This is an action to reform a deed. Defendant-seller and Plaintiff-purchaser viewed the property in question and both agreed that what was to be conveyed lay between point 'x' and point 'y'. The problem is that Defendant believed that the land to be conveyed consisted of fewer lots than was the case. Defendant's price for the conveyance was based on that belief and the deed was drafted based on that belief. The description in the deed did not, therefore, include all of the property between point 'x' and point 'y'.
 "Clearly, the parties mutually agreed on the actual property to be conveyed. The failure of the deed to reflect that agreement was a mutual mistake. The fact that Defendant was misinformed as to the number of lots she owned does not alter her expressed intention to convey all of the property between the agreed points."
 I
The first issue we address is whether there was sufficient evidence before the trial court of a mutual mistake on which to base a reformation of the deed.
It is readily apparent, from a reading of Athalie Long's testimony at trial, that both parties were under the mistaken belief that the deed conveyed the property from the Burns property line (i.e., the line of a certain neighboring landowner) to within 100 feet of the Grand Bay water tower. In essence, the description contained within the deed erroneously omitted a portion of the property intended to be conveyed. The following testimony of Athalie Long, given on cross-examination, clearly exposes her intentions regarding the conveyance:
 "Q. Do you remember your conversation regarding what the boundary lines were?
 "A. I owned — I told her I owned the property from the Burns line to the water works. That was in the section that I owned. But I sold the property to her from that plat and it was the same plat that was shown here because it's the only one I have ever had. We sat right on my porch and came to these conclusions.
 "Q. You testified earlier that you intended to sell all of that property that you owned; is that correct?
 "A. I was willing to sell it all. I did not know that there was three lots there instead of two.
 "Q. So is it a fair and accurate statement that a mistake was made on the deed and you intended at that time to sell all the property that you owned on that —
 "A. I would have sold it but the price would have been different. The price was figured on the size of the lot.
 "THE COURT: Let me see if I understand what you have said. You have told Ms. Vielle that you owned all of the property from the Burns line to the water tower?
"THE WITNESS: Right.
"THE COURT: And that's all you thought you owned? *Page 970 
 "THE WITNESS: Well, that's all I owned, but —
 "THE COURT: All right. Then was it your intention to sell her what you thought you owned there?
 "THE WITNESS: My intention was to sell her two lots, which is all that I thought I owned. It did not come up until this —
 "THE COURT: You told me that you thought you owned the property from the Burns line to the water tower.
 "MR. GALLOWAY: Judge, she has got to explain that. There is more to it that hasn't been brought out as to why she thought that.
 "THE COURT: Let me ask her the questions for a moment.
"MR. GALLOWAY: All right.
 "THE COURT: You said that you owned all the property from the Burns — that you thought you owned all the property from the Burns line to the water tower?
"THE WITNESS: Yes, I owned it.
"THE COURT: Let me finish.
"THE WITNESS: I'm sorry.
 "THE COURT: You thought you owned that, right? And that it was your intention to sell her all that you owned?
 "THE WITNESS: I was willing to sell all that I owned, but the plat said those two lots and I had thought that Ladner got the third lot.
 "THE COURT: Well, I understand that it's divided up into more lots than you thought.
 "THE WITNESS: Yes, right. There was an extra lot there that I didn't know about, but the price and everything was figured from the plat.
 "Q. So it's your testimony the negotiations were based on lots and not boundary lines?
"A. Right.
 "Q. Even though you took Ms. Vielle over there and showed her boundary lines and discuss[ed] your property and the price that you wanted for that property? You have testified that you, Ms. Vielle, Ms. Vielle's mother, Frances Vielle, and Ms. Vielle's ex-husband, Mr. Bowers, [rode] to the property and at that time you discussed the boundaries to the property that you wanted to sell Ms. Vielle; is that correct?
"A. Yes, um-hum.
 "Q. Okay. You never told Ms. Vielle that she was on property that you owned, did you?
"A. No.
"* * * *
 "Q. Were you aware that Ms. Vielle was placing a trailer on that property?
"A. Yes.
 "Q. Did you ever direct her not to place a trailer on that property?
 "A. No, because I thought the footage that I sold came that far. That's the whole thing. We should have had it surveyed, I am sure. But I thought the footage —
"* * * *
"Q. Didn't you have the deed prepared?
"A. Yes, um-hum.
 "Q. Okay. So it's true you never requested Ms. Vielle to stop clearing that property?
"A. No.
 "Q. You never directed her to take her trailer off?
 "A. No. I stated that I thought that the two lots included that area.
"Q. Okay.
"A. That was my understanding.
 "Q. Did you ever request that Ms. Vielle pay rent for lot [three]?
"A. No, I didn't.
 "Q. So, you thought she purchased lot [three]; is that true?
 "A. I thought that it was included in the two lots."
It is axiomatic that a court in Alabama may exercise its equitable jurisdiction to reform a deed that does not accurately reflect the intentions of the parties. "One ground for reformation of a written instrument is mutuality of mistake." Powell v. Evans, 496 So.2d 723, 725 (Ala. 1986). (Citations omitted.) With regard to mutuality of mistake, this Court in Palmer v. Palmer, 390 So.2d 1050, 1053 (Ala. 1980), stated: *Page 971 
 "Mistake of fact is a well-recognized ground for interposition of a court of equity. 13 Am.Jur.2d Cancellation of Instruments § 31 (1964). Where it appears that by a mutual mistake of all parties the instrument does not conform to or express their intention or agreement, as where by mistake some material part of the instrument is omitted or the deed is drawn to convey a different interest or a greater or lesser estate than was agreed upon, relief may be had in equity against the other party to the conveyance or his privies. 23 Am.Jur.2d Deeds §§ 155, 158 (1965).
 "Although a deed in terms expresses the intention of the parties, if there is a material mistake as to the property to which those terms apply, such as to its identity, situation, boundaries, title, amount, value, and the like, a court of equity may grant appropriate relief. Goodrich v. Lathrop, 94 Cal. 56, 29 P. 329 (1892)."
The trial court did not err in reforming the deed.
 II
We must next determine whether Sharon Long was a bona fide purchaser for value. Reformation should not be granted if a bona fide purchaser has since acquired legal title to the disputed property "in good faith for value without notice, either actual, constructive, or inquiry, of the grounds for reformation." Lee v. Brown, 482 So.2d 293, 297 (Ala. 1985).
Alabama Code 1975, § 35-4-153, provides:
 "When, through fraud, or a mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a deed, mortgage or other conveyance does not truly express the intention of the parties, it may be revised by a court on the application of the party aggrieved so as to express that intention, insofar as this can be done without prejudice to rights acquired by third persons in good faith and for value."
With regard to bona fide purchasers this Court has stated:
 "A bona fide purchaser is one who (1) purchases legal title, (2) in good faith, (3) for adequate consideration, (4) without notice of any claim of interest in the property by any other party. . . . Notice sufficient to preclude a bona fide purchase may be actual or constructive or may consist of knowledge of facts which would cause a reasonable person to make an inquiry which would reveal the interest of a third party."
Rolling "R" Constr., Inc. v. Dodd, 477 So.2d 330, 331-32 (Ala. 1985).
Recently, this Court stated:
 " '[If a purchaser has] sufficient information to stimulate inquiry which would lead to knowledge of adverse or hostile and superior claim or title, and fails therein, the injury is the result of his own folly — he is wanting in good faith, an indispensable element of a purchaser (for value) without notice — and a court of equity will not protect such reckless purchaser.'
 Leslie v. Click, 221 Ala. 163, 165, 128 So. 170, 172 (1930)."
Taylor v. Kohler, 507 So.2d 426, 427 (Ala. 1987).
Sharon Long, who lived across the road from the disputed property, was clearly on notice of Vielle's claim.
 III
The next issue we address is whether the judgment is, nevertheless, void because an indispensable party was not before the court. Athalie Long argues that the trial court erred in entering its judgment without having made Sharon Long, the purchaser at the tax sale, a party. Athalie Long contends that Sharon Long was an indispensable party whose rights were adversely affected by the judgment entered. We disagree.
Rule 19(a), Ala.R.Civ.P., provides in relevant part:
 "(a) Persons to Be Joined if Feasible. A person who is subject to jurisdiction of the court shall be joined as a party in the *Page 972 
action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action."
This Court has also stated:
 "It is [the] plaintiff's duty to join as a party anyone required to [be] joined. . . . If such persons are not joined, the plaintiff must, under subsection (c) of Rule 19, ARCP, state their names and the reasons why they are not joined. If there is a failure to join a person needed for just adjudication by a litigant, then, under subsection (a) of Rule 19, the trial court shall order that he be made a party.
 "However, failure of the plaintiff or the trial court to add a necessary and indispensable party, and of the defendant to raise the absence of such party in his or her pleadings, does not necessarily dispose of the issue. This defect can be raised for the first time on appeal by the parties or by the appellate court ex mero motu. Mead Corp. v. Birmingham, 350 So.2d 419 (Ala. 1977); Davis v. Burnette, 341 So.2d 118 (Ala. 1976)."
J.C. Jacobs Banking Co. v. Campbell, 406 So.2d 834, 849-50
(Ala. 1981). (Emphasis added.)
A similar conclusion was reached by this Court in Morris v.Owens, 292 Ala. 159, 161, 290 So.2d 646, 648 (Ala. 1974), wherein it was stated:
"In holding that the absence of necessary or indispensable parties is jurisdictional, making a final decree reforming a deed void, this court in Rogers v. Smith, 287 Ala. 118,248 So.2d 713 (1971) recited the following:
 " 'In Holland v. Flinn, 239 Ala. 390, 195 So. 265
[1940], this court stated that the absence of necessary parties under the Declaratory Judgment Act was a jurisdictional defect, and further that regardless of such statute the presence of necessary parties is jurisdictional. This holding was quoted with approval in the case of City of Mobile et al. v. Gulf Development Co., Inc., 277 Ala. 431, 440, 171 So.2d 247 [1965].
 " 'A judgment or decree is not binding on anyone unless the court rendering the same had jurisdiction of the parties and the subject matter of the cause. See Farrell v. Farrell, 243 Ala. 389, 10 So.2d 153 [1942]. The decree of a trial court which has not obtained jurisdiction over necessary parties is void. Board of Trustees of Employees' Retirement System of the City of Montgomery, Alabama v. Dorothy Carr Talley, [286 Ala. 661, 244 So.2d 791 (1971),] supra.'
 " 'Thus the absence of necessary or indispensable parties in a deed reformation suit is a jurisdictional defect and this Court holds that such defect can be brought to the attention of an appellate court on appeal from a decree involving a bill in the nature of a bill of [review] even when it is not called to the attention of the trial court.'
"In the case of Harris v. Johnson, 176 Ala. 445, 448,58 So. 426 (1912), this court held that the absence of necessary or indispensable parties necessitated the dismissal of the cause without prejudice or a reversal with directions to allow the cause to stand over for amendment, even though no notice was taken in the court below of the omission of parties. Board ofTrustees of Employees' Retirement System of the City ofMontgomery, Alabama v. Talley, 286 Ala. 661, *Page 973 244 So.2d 791 (1971) is another recent case to the same effect.
 "This court has held it was the duty of the court ex mero motu to notice the absence of a necessary or indispensable party whether on final hearing or on appeal. Amann v. Burke, 237 Ala. 380, 186 So. 769 (1939), and Box v. Box, 253 Ala. 297, 45 So.2d 157 (1950). See also, Matthews v. Matthews, 247 Ala. 472, 25 So.2d 259 (1946)."
The law regarding indispensable parties is quite clear, but it is not inflexible. In Moody v. Moody, 339 So.2d 1030, 1034
(Ala.Civ.App.), cert. denied, 339 So.2d 1035 (Ala. 1976), the Court of Civil Appeals described one instance of flexibility:
 "A close examination of Rule 19, ARCP, implies that a person should be joined as a party, in the first instance, if he is absent and, further, that the failure to so join is prejudicial to such person. In this instance, [the non-party] was not absent within the contemplation of the rule and to this court was not prejudiced by the failure to be added as a party.
 "According to Moore, Moore's Federal Practice § 0.411(6) 2nd Ed. (1974) at 1552:
 " 'If a non-party who thus participates in litigation has an interest sufficiently close to the matter in litigation, and has adequate opportunity to litigate in support of or in defense against the cause of action on which the suit is based, the policies . . . require that the participating non-party should be bound by the resulting judgment to the same extent as though he were a party to the action. . . .' "
In the case at bar, the evidence is undisputed that Sharon Long purchased the property from the State of Alabama for back taxes. It is also without dispute that Sharon Long lived directly across the street from the property in dispute. Furthermore, at all times subsequent to 1979, Sharon Long had knowledge of Vielle's claim to the property. In fact, Sharon Long was present and actually testified at the trial of this matter. Accordingly, she had ample opportunity to be heard on issues pertinent to a determination of proper title to the property in question. Therefore, Sharon Long is not within that class of parties who are guaranteed protection by Rule 19. Consequently, based on these facts, we fail to see how any prejudice to Sharon Long results by the trial court's judgment. Sharon Long was not "absent" within the contemplation of Rule 19(a), Ala.R.Civ.P.
This case was tried ore tenus. We have said:
 "In cases tried ore tenus, the trial court's judgment is presumed to be correct and it will not be disturbed on appeal if supported by credible evidence. Jones v. Henderson, 535 So.2d 90, 91
(Ala. 1988)."
Watson v. Herring, 549 So.2d 33 (Ala. 1989)
The trial court's judgment reforming the deed is therefore due to be, and it is hereby, affirmed.
AFFIRMED.
HORNSBY, C.J., and ALMON, ADAMS and STEAGALL, JJ., concur.
[1] It appears that Long owned three lots (which we will call lots one, two, and three), and that the deed to Vielle referred to two of these lots.