PER CURIAM.
The defendant, Billy Ray Whittemore, individually and as the administrator of the estate of Joyce Fay Whittemore, deceased, appeals from a judgment in favor of the plaintiffs, Patricia Varner and others, who had sought reformation of a deed.
The record reveals the following pertinent facts.
George and Robbie Turner, the grandparents of the plaintiffs, owned a tract of land that included a 10-acre parcel referred to as “parcel 12.” On March 6, 1973, the Turners conveyed to Billy Ray Whittemore and his wife, Joyce Faye Whittemore, by warranty deed, that tract of land that included parcel 12.
The record indicates that from 1973 to 1978, however, George Turner (“Turner”) continued to exercise dominion over parcel 12.
In 1978, the Whittemores sued George Turner and others, alleging that these defendants were trespassing onto the Whitte-more tract. That lawsuit was not specifically directed to issues of the ownership of parcel 12. The Whittemores alleged that Billy Ray Whittemore had caught two of those defendants other than Turner, on the Whittemore tract stealing Whittemore cattle, and alleged that Turner was tampering with the Whittemores’ gates. The court issued a temporary restraining order enjoining Turner from coming onto the Whittemore tract, and the trial court later issued, as a part of a consent judgment, a permanent injunction enjoining Turner from “interfering with [the Whittemores’] use of the property ... in any way whatsoever.”
We emphasize that the trial court’s judgment was an express ratification of an agreement of the parties, the pertinent parties being the Whittemores and Turner. As part of that May 1983 consent judgment expressly ratifying the Turner/Whittemore agreement, it was stated that all “exist[ing] claims” and “any and all other claims whatsoever between the Whitte- *144 mores and Turner, were deemed “completely resolved” and “settled.” This judgment was signed by the trial court and endorsed as “approved” by the legal representatives of Turner and the Whittemores. It expressly described the Whittemore property as consisting of a tract that included parcel 12.
It is of note that this consent judgment dealt both with “existing] claims” and “any and all other claims whatsoever” between Turner and the Whittemores. Thus, we read this latter phrase as plainly waiving any potential but not yet stated claim, i.e., any existing claim relating to things that might have occurred up to May 1983.
As stated, the record indicates that before that agreement, from 1973 to 1978, Turner exercised dominion over the whole of parcel 12 as an adverse “owner.” The record also indicates that in 1978, Turner’s grandson, Roger Wilson, and Wilson’s wife, Diane, commenced possession of an acre within parcel 12 as purported grantees of George and Robbie Turner.[1] As matters of possession stood at the time of the May 1983 consent judgment, the record indicates that Turner was exercising actual possession over a portion of parcel 12, that one acre of parcel 12 was possessed by the Wilsons, and that Turner was paying taxes on the whole of parcel 12.
In September 1983, the Wilsons purported to deed and surrender possession of that acre in parcel 12 back to George and Robbie Turner. At that time, the Whittemores held a 1973 deed that included all of parcel 12, the Turners held a 1983 deed to one acre in parcel 12, and George Turner had been paying taxes on all of parcel 12 since 1973.
In September 1984, the Turners purported to deed all of parcel 12 to Samuel and Brenda Sanders. The Sanderses purported to deed all of parcel 12 back to the Turners in April 1985 by a survivorship warranty deed.
Around July 1985 the Turners entered a lease agreement with Eddie and Jo Ann Parker relative to parcel 12, which was terminated by George Turner’s estate on February 4, 1988.
George Turner had died in 1987, evidently predeceased by Robbie Turner. His heirs claimed an interest in all of parcel 12, although parcel 12 was not referred to in his will.
In 1988, the heirs conveyed by quitclaim deed all of parcel 12 to the plaintiff grandchildren in this case.
It is undisputed that from 1973 to 1990 the taxes on parcel 12 were assessed to and paid by persons other that the Whitte-mores. The taxes on parcel 12 were assessed to Turner and he paid them from 1973 to 1983, and he and other of the plaintiffs’ predecessors in interest were assessed, and they paid, the taxes from 1984 to 1990.
Whittemore testified that he had thought he was assessed and was paying these taxes, evidently through an assessment of his tract that he assumed included parcel 12.
After obtaining a quitclaim deed from the Turner heirs, the plaintiff grandchildren requested that the Whittemores also convey parcel 12 to them. The Whitte-mores refused, and the plaintiffs sued to reform the 1973 deed that had conveyed the property to Whittemore and his wife.[2]
The plaintiff grandchildren alleged that the Turners had intended to except parcel 12 from the 1973 conveyance to the Whitte-mores and had failed to do so only through mistake; specifically, by inadvertently omitting the words “less and except” before the description of parcel 12 in that deed.
The plaintiff grandchildren also contended that through their predecessors in interest they had title to parcel 12 pursuant to *145 Ala.Code 1975, § 6-5-200 (stating the requirements for adverse possession based on a period of 10 continuous years of enumerated acts of possession).
The trial court, after receiving ore tenus evidence, found that the plaintiffs had established title by adverse possession of parcel 12 and that parcel 12 had been excepted from the Whittemore deed. As to this latter finding, the trial court evidently meant that the Turners and the Whittemores had intended to except parcel 12, but by mutual mistake had failed to do so. It is undisputed that the deed itself did not except parcel 12.
The trial court ordered a reformation of the Whittemore deed to except parcel 12, the effect of which was to vest clear title to parcel 12 in the plaintiff grandchildren.
The plaintiff grandchildren strongly dispute any applicability of the May 1983 agreement and consent judgment to this case. We are not persuaded by their arguments in this regard and note that they do not assert that the consent judgment was in any way ambiguous; rather, they argue that the matters before the court at that time related only to cattle theft and trespass on parts of the Whittemore tract other than parcel 12. We agree, but we find that whatever the matters at hand were, their grandfather voluntarily entered into a very broad agreement and waiver of his rights that applied to “any and all” matters between himself and the Whittemores up to May 1983, evidently in the interest of settling the trespass and cattle theft lawsuit.
The practical effect of that agreement, as it relates to this lawsuit, is that any part of a claim of adverse possession that the plaintiff grandchildren may have had through any of Turner’s acts of possession that occurred prior to May 1983, has been waived. Turner himself repudiated, by agreement, any such claim.
Moreover, we emphasize that the record does not indicate that anyone except Turner ever exercised dominion over the whole of parcel 12 or paid taxes on the parcel from 1973 until May 1983.
After the Turner waiver of claims in 1983, any new adverse possession claim to the whole of parcel 12 would date no earlier than from the time of that waiver, May 1983.[3]
Dating incidents of adverse possession from May 1983, we find it clear that the 10-year possession requirement of Ala. Code 1975, § 6-5-200, asserted by the plaintiff grandchildren, has not been met in this case.
We note, however, that the May 1983 consent judgment would not dispose of any argument relating to mutual mistake of the parties relative to the 1973 Whittemore deed. Robbie Turner, the co-grantor of that deed, was not a party to that agreement. Nevertheless, we would find the evidence on this issue to be insufficient to warrant an order directing the reformation of that deed.
There is a presumption arising from an instrument itself, supporting it as an expression of the true intent of the parties. Marengo Abstract Co. v. C.W. Hooper & Co., 174 Ala. 497, 56 So. 580 (1911). One asserting mutual mistake in the creation of a deed cannot prevail “[i]f the proof is uncertain in any material respect.” Jim Walter Homes, Inc. v. Phifer, 432 So.2d 1241, 1242 (Ala.1983).
*146 The Whittemores’ deed plainly indicates that parcel 12 was conveyed by the Turners to them. Other evidence on the intention of the parties relative to that deed was conflicting.
Billy Ray Whittemore testified that he and Turner had discussed that he was to be deeded parcel 12 as a part of the tract he was buying and that at the time of that conveyance this was their intention. He testified to specific conversations on this point and stated, in substance, that his receiving this parcel was a matter of some importance to the parties at the time of the conveyance.
Several of the plaintiff grandchildren testified that Turner had always spoken of parcel 12 as being his property, which one might take to mean either that Turner was mistaken as to the content of the deed to the Whittemores and that it did not express his intent or that Turner believed he owned parcel 12 by adverse possession.
There was no testimony relative to the intent of cograntor Robbie Turner or co-grantee Joyce Fay Whittemore.
The plaintiff grandchildren point to the fact that the Whittemores were not paying the taxes on parcel 12, to imply that it had not been within their intention to receive parcel 12. However, Whittemore testified that he had spoken with the local revenue commissioner on several occasions and understood that he was being assessed for his entire tract, including parcel 12.
Clearly, the proof on this issue was uncertain in a material respect and, with due deference to the learned trial court, we find it insufficient to overcome the presumption in favor of the express language of the Whittemore deed.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES, STEAGALL, and KENNEDY, JJ., concur.

. Diane Wilson did not offer testimony at trial, and Roger Wilson's testimony did not indicate precisely how much of parcel 12 he purported to possess. However, Turner-to-Wilson and Wilson-to-Turner deeds received into evidence as exhibits of the plaintiff grandchildren indicate that the Wilsons purported to hold title to an "acre" within parcel 12.

. During the pendency of this case Mrs. Whitte-more died and Mr. Whittemore, as the administrator of her estate, was substituted as a defendant.

. We recognize that Roger Wilson was not a party to Turner’s 1983 agreement and that the record indicates that when Turner reacquired possession of that acre after May 1983, Wilson had been on that acre under color of title since 1978. However, the plaintiffs do not make a claim for the Roger Wilson acre but, rather, the whole of parcel 12.
Also, we note that any claim of adverse possession as through George Turner's frequent co-grantor and cograntee, Robbie Turner, was not barred by Turner's 1983 agreement, to which she was not a party. However, nothing in the record indicates that Robbie Turner would have met any of the Ala.Code 1975, § 6-5-200, requirements for the requisite 10 years. For example, Robbie Turner could not be said to have possessed parcel 12 under color of title until after May 1983; relative to the whole of parcel 12, and after the 1973 conveyance of it to the Whittemores, Robbie Turner does not appear as a grantee of that property until 1985. Also, there is no evidence that Robbie Turner was ever assessed, or ever paid, taxes on parcel 12 after 1973.