*204
 
 BRYAN, Judge.
 

 Regions Bank, as trustee of the J.F.B. Lowrey Trust (“the Trust”), appeals from a judgment entered in favor of Jerold Dean (“Jerold”) on Jerold’s reformation and ejectment claims. We reverse and remand.
 

 This case concerns a dispute between Regions and Jerold over the ownership of a 40-acre woodland tract (“the property”) comprising the northwest quarter of the northeast quarter of Section 30, Township 7 North, Range 10 East, Conecuh County. The following is a brief recitation
 
 of how
 
 Regions, as trustee of the Trust, obtained record title to the property. In a 1959 deed (“the 1959 deed”), Sam L. Lowrey, acting as trustee of the Trust, acquired a partial interest in the property from David L. Burt, Jr. In a 1965 deed (“the 1965 deed”), Lowrey, acting as trustee of the Trust, acquired the remaining interest in the property from various members of the Dean family. The 1965 deed names Aubrey Dean (“Aubrey”), Jerold’s father, as a grantor. In 1991, Regions became co-trustee of the Trust, and, in 1993, it became the sole trustee.
 

 Jerold’s claim to the property may be summarized as follows. In a 1934 deed (“the 1934 deed”), G. Cary Dean’s heirs and their spouses conveyed certain property to Aubrey, Jerold’s father. G. Cary Dean is Jerold’s great-uncle. At trial, Jerold contended that a scrivener’s error had resulted in a description of the property inadvertently being omitted from the 1934 deed,
 
 ie.,
 
 Jerold claimed that the 1934 deed was intended to convey the property to Aubrey. The 1934 deed, according to Jerold, should have made Aubrey the sole owner of the property. Jerold further contended that, when Aubrey died in 1978, the property passed by intestate succession to Jerold’s mother. At trial, Jerold produced a deed dated October 23, 1997, purporting to convey the property from his mother to him. Also in 1997, the 1934 deed was recorded after Jerold found it among his father’s records.
 

 On August 25, 2005, Jerold sued Regions, as trustee of the Trust, stating a claim of ejectment concerning the property. Regions answered and filed a counterclaim alleging (1) that the Trust owned the property by virtue of the 1959 deed and the 1965 deed and (2) that, alternatively, the Trust had acquired the property by statutory adverse possession or adverse possession by prescription. Jerold amended his complaint to add a claim seeking to reform the 1934 deed and seeking to reform or set aside the 1965 deed. In his amended
 
 complaint,
 
 Jerold alleged that the 1934 deed, which conveyed certain property to his father, Aubrey, should be reformed to include a description of the property as part of the conveyed property in that deed. Jerold further alleged that the 1965 deed, which conveyed the property and other property to Lowrey, as trustee of the Trust, should be set aside or reformed to delete a description of the property from the conveyed property in that deed.
 

 The trial court bifurcated the issues for trial. First, the trial court held a bench trial on Jerold’s reformation claims. On October 9, 2007, the trial court entered an order reforming the 1934 deed to include a description the property as part of the conveyed property in that deed and reforming the 1965 deed to delete a description of the property as part of the conveyed property in that deed. The trial court’s order divested the Trust of record ownership of the property.
 

 Jerold’s ejectment claim and Regions’ adverse-possession counterclaim were subsequently tried before a jury. Regions moved for a judgment as a matter of law at the close of Jerold’s case-in-chief and at
 
 *205
 
 the close of all evidence, and the trial court denied those motions. The jury rendered a verdict in favor of Jerold and awarded him $30,000 in damages, and the trial court entered a judgment on the verdict. Regions filed a postjudgment motion that was denied by operation of law. Regions appealed to the supreme court, and the supreme court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala.Code 1975.
 

 On appeal, Regions raises several issues. We first address Regions’ argument that the record on appeal does not contain clear, convincing, and satisfactory evidence supporting the trial court’s reformation of the 1934 deed and the 1965 deed. The record indicates that the deeds were reformed on the ground of mutual mistake.
 

 “ ‘The general rule in Alabama is that a court may exercise its equitable powers to reform a deed to make it conform to the intention of the parties.’
 
 Powell v. Evans,
 
 496 So.2d 723, 725 (Ala.1986);
 
 Clemons v. Mallett,
 
 445 So.2d 276, 278 (Ala.1984). One of the grounds for reformation of a deed is mutual mistake of the parties.
 
 Long v. Vielle,
 
 549 So.2d 968, 970-71 (Ala.1989). A mutual mistake exists when the parties have entered into an agreement, but the deed does not express what the parties intended under the agreement.
 
 Daniels v. Johnson,
 
 539 So.2d 259, 260 (Ala.1989). In determining whether a mutual mistake exists, ‘[t]he initial factual question is, of course, what the parties intended the instruments to express at the time they were executed.’
 
 Jim Walter Homes, Inc. v. Phifer,
 
 432 So.2d 1241, 1242 (Ala.1983) (citing
 
 Behan v. Friedman,
 
 218 Ala. 513, 119 So. 20 (1928)). However, the trial court ‘ “cannot make a new [instrument] for the parties, nor establish that as a[n] [instrument] between them, which it is supposed they would have made, if they had understood the facts.” ’ 432 So.2d at 1242 (quoting
 
 Holland Blow Stave Co. v. Barclay,
 
 193 Ala. 200, 206, 69 So. 118, 120 (1915)).
 
 See also Beasley v. Mellon Fin. Servs. Corp.,
 
 569 So.2d 389, 393 (Ala.1990) (‘The trial court cannot make the instrument express a new contract for the parties.’). The mistake must also be mutual as to all parties to the instrument.
 
 Palmer v. Palmer,
 
 390 So.2d 1050, 1053 (Ala.1980) (‘Where it appears that by a mutual mistake of all parties the instrument does not conform to or express their intention or agreement, ... relief may be had in equity ....’).
 
 See also Marx v. Long,
 
 631 So.2d 983, 988 (holding that the mutual mistake must be as to all parties to the instrument);
 
 Beasley,
 
 569 So.2d at 394 (‘[T]he mistake must be mutual as to all of the parties ....’).
 

 “ ‘ “[T]here is a presumption arising from the instrument itself supporting it as the true agreement.” ’
 
 Marx,
 
 631 So.2d at 988 (quoting
 
 Phifer,
 
 432 So.2d at 1243). To rebut this presumption, the party seeking reformation must produce clear, convincing, and satisfactory evidence that the deed does not express the true intentions of the parties at the time the instrument was created.
 
 Hollis v. Cameron,
 
 572 So.2d 439, 441 (Ala.1990);
 
 Daniels,
 
 539 So.2d at 260;
 
 Powell,
 
 496 So.2d at 726. In addition, the party seeking reformation must produce clear, convincing, and satisfactory evidence of what the parties actually intended the writing to express.
 
 See Powell,
 
 496 So.2d at 726;
 
 Clemons,
 
 445 So.2d at 279;
 
 Fields v. Phelps,
 
 668 So.2d 856, 858 (Ala.Civ.App.1995). ‘ “ ‘If the proof is uncertain in any material respect, it will be held insufficient; and, while the courts may feel a great wrong has been done, they cannot grant relief by reason of uncertainty.’ ” ’
 
 Phifer,
 
 432 So.2d at
 
 *206
 
 1243 (quoting
 
 Hammer v. Lange,
 
 174 Ala. 337, 340, 56 So. 573, 573 (1911)) (citation omitted).
 
 See also Whittemore v. Varner,
 
 607 So.2d 142, 145 (Ala.1992).”
 

 Fadalla v. Fadalla,
 
 929 So.2d 429, 434-35 (Ala.2005).
 

 The 1934 deed named as grantors “W.E. Dean and wife Missouri Dean; J.E. Dean and wife Claudie Dean; Felion Dean and wife Omie Dean; Herbert Dean and wife Nannie Dean; Marion Dean and wife He-lan Dean; and Bradley Dean.” Of those 11 named grantors, 9 grantors signed the deed. The 1934 deed purported to convey the following property, among other property, to Aubrey, Jerold’s father: “Northwest quarter of Northeast quarter
 
 Section ten,
 
 Township seven, Range ten.” (Emphasis added.) The 1934 deed also stated: “The intention of this deed is to convey all the lands owned by G. Cary Dean at the time of his death, No more nor no less.” The trial court reformed the 1934 deed by replacing “Section ten” with “Section 30” in the above description of the deeded property. That is, the trial court reformed the 1934 deed so that that deed conveyed the property to Aubrey.
 

 At trial, David Hyde, an attorney, testified that probate records indicate that the grantors in the 1934 deed had never owned the “Northwest quarter of Northeast quarter Section ten, Township seven, Range ten,” property that the 1934 deed purported to convey Aubrey. However, the fact that the grantors in the 1934 deed did not own land in Section 10 does not establish that the grantors intended to convey land situated in Section 30. Jerold submitted into evidence three mortgages, dated 1939, 1950, and 1952, executed by Aubrey, the grantee in the 1934 deed. Each of those mortgages listed the property, along with other properties, as collateral. Although those mortgages indicate that Aubrey claimed the property, they do not establish an intent by the grantors in the 1934 deed to convey the property to Aubrey. The record indicates that taxes on the property were assessed in Aubrey’s name from 1936 to 1987.
 
 [1]
 
 However, that evidence does not establish that the grantors in the 1934 deed intended to grant the property to Aubrey. None of the parties to the 1934 deed testified at trial. Further, only 9 of the 11 grantors named in the 1934 deed actually signed the deed, and the deed was not recorded until 1997.
 

 In order to reform a deed, “the party seeking reformation must produce clear, convincing, and satisfactory evidence that the deed does not express the true intentions of the parties at the time the instrument was created.”
 
 Fadalla,
 
 929 So.2d at 434. The party seeking reformation must also “produce clear, convincing, and satisfactory evidence of what the parties actually intended the writing to express.”
 
 Id.
 
 at 435. In this case, the record does not contain clear, convincing, and satisfactory evidence that the parties to the 1934 deed intended to convey the property to Aubrey when that deed was executed. Accordingly, the trial court erred in reforming the 1934 deed to express a conveyance of the property to Aubrey.
 

 In the 1965 deed, Velma D. Fountain, Lee Fountain, Aubrey Dean, Dorothy R. Dean, Alvin Dean, Claudia Y. Dean, Melvin Dean, and Exalee B. Dean conveyed the property and other properties to Low-rey, as trustee of the Trust. The 1965 deed indicated that the grantors were the surviving heirs and widow of J.E. Dean, Jerold’s grandfather. None of the parties to the 1965 deed testified at trial. As
 
 *207
 
 noted, the trial court reformed the 1965 deed by deleting a description of the property from the description of the deeded property.
 

 The record does not contain clear, convincing, and satisfactory evidence supporting the trial court’s reformation of the 1965 deed. In 1971, Aubrey and his wife Dorothy Dean executed an “oil, gas and mineral lease” purportedly leasing the property and other properties to the Shenandoah Oil Company. The record also contains mortgages, executed by Aubrey and his wife, dated 1969, 1970, and 1971, listing the property as collateral. Jerold submitted into evidence a 1975 instrument assigning the aforementioned 1950 mortgage covering the property to Lowrey, the former trustee of the Trust. Those documents indicate Aubrey’s claim to the property, but those documents do not establish the intent of all the parties to the 1965 deed.
 

 The record contains evidence undermining Jerold’s claim that the parties to the 1965 deed did not intend to include the property in the conveyance to Lowrey, as trustee of the Trust. Bill Lane, a forester, testified that he appraised the property for Lowrey in the 1960s because, according to Lane, Lowrey was interested in purchasing the property for the Trust. Lowrey, as trustee of the Trust, had previously acquired a partial interest in the property through the 1959 deed. Lane testified that, after informing Lowrey that the Trust had not been paying taxes on the property, Lowrey informed Lane that the Trust should be paying taxes on the property. Lane testified that he subsequently presented the 1965 deed to the tax assessor, who changed the tax records to assess the property in the Trust’s name. Beginning in 1988, the property was assessed in the Trust’s name.
 

 The record does not contain clear, convincing, and satisfactory evidence that the parties to the 1965 deed intended to exclude the property from the properties conveyed in that deed to Lowrey, as trustee of the Trust. Accordingly, the trial court erred in reforming that deed. This conclusion pretermits discussion of the other arguments made by Regions for reversing the trial court’s reformation of the 1934 deed and the 1965 deed. This conclusion also makes it unnecessary to discuss Regions’ argument that, if the trial court’s reformation of the 1934 deed and the 1965 deed is affirmed by this court, then the Trust acquired the property by adverse possession.
 

 Regions also argues that the trial court erred in denying Regions’ motions for a judgment as a matter of law (“JML”) regarding Jerold’s ejectment claim. As .noted, after the trial court reformed the 1934 deed and the 1965 deed, a jury found for Jerold on his ejectment claim.
 

 “When reviewing a ruling on a motion for a JML, this Court uses the same standard the trial court used initially in deciding whether to grant or deny the motion for a JML. Palm
 
 Harbor Homes, Inc. v. Crawford,
 
 689 So.2d 3 (Ala.1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case to be submitted to the jury for a factual resolution.
 
 Carter v. Henderson,
 
 598 So.2d 1350 (Ala.1992). The nonmovant must have presented substantial evidence in order to withstand a motion for a JML. See § 12-21-12, Ala.Code 1975;
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by
 
 *208
 
 the jury.
 
 Carter,
 
 598 So.2d at 1353. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmov-ant and entertains such reasonable inferences as the jury would have been free to draw.
 
 Id.
 
 Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court’s ruling.
 
 Ricwil, Inc. v. S.L. Pappas & Co.,
 
 599 So.2d 1126 (Ala.1992).”
 

 Waddell & Reed, Inc. v. United Investors Life Ins. Co.,
 
 875 So.2d 1143, 1152 (Ala.2003). In an ejectment action,
 

 “the plaintiff [must] prove a right to possession at the time of the commencement of the action.
 
 State v. Broos,
 
 257 Ala. 690, 60 So.2d 843 (1952);
 
 Betz v. Mullin,
 
 62 Ala. 365 (1878);
 
 Salter v. Fox,
 
 191 Ala. 34, 67 So. 1006 (1915). The plaintiff may allege and prove that he either has the legal title to, or was possessed of, the land and that the defendant entered thereupon and unlawfully withholds and detains it.
 
 Atlas Subsidiaries of Florida, Inc. v. Kornegay,
 
 288 Ala. 599, 264 So.2d 158 (1972).
 

 “As at common law, the plaintiff must prevail on the strength of his own legal title or claim to possession and not on the weakness of the defendant’s.
 
 Miller v. Jones,
 
 280 Ala. 612, 196 So.2d 866 (1967).”
 

 MacMillan Bloedell, Inc. v. Ezell,
 
 475 So.2d 493, 496-97 (Ala.1985).
 

 The trial court’s reformation of the 1934 deed and the 1965 deed provided Jerold with a seemingly clear way to establish legal title to the property. Based upon the reformation of the deeds, Jerold’s claim to legal title appears to be as follows: (1) his father, Aubrey, acquired sole ownership of the property by the 1934 deed; (2) the property was not conveyed by the 1965 deed to Regions’ predecessor in interest, acting as trustee of the Trust; (3) Jerold’s mother acquired the property by intestate succession upon Aubrey’s death in 1978; and (4) Jerold acquired the property by deed from his mother in 1997. However, we have concluded that the trial court erred in reforming the deeds. Consequently, Regions, as trustee of the Trust, has record
 
 title to the
 
 property. Therefore, it is clear that Jerold’s ejectment claim, insofar as it based on the reformation claims, must fail.
 

 However, at trial, Jerold argued that, even if the 1934 deed and the 1965 deed were not reformed, his predecessor in interest, Aubrey, had acquired legal title to the property through adverse possession by prescription. Therefore, Jerold argues that he was entitled to prevail on his ejectment claim for this alternative reason.
 

 “In Alabama there are basically two types of adverse possession, these two types being statutory adverse possession and adverse possession by prescription. Adverse possession by prescription requires actual, exclusive, open, notorious and hostile possession under a claim of right for a period of twenty years.
 
 See, Fitts v. Alexander,
 
 277 Ala. 372, 170 So.2d 808 (1965). Statutory adverse possession requires the same elements, but the statute provides further that if the adverse possessor holds under color of title, has paid taxes for ten years, or derives his title by descent cast or devise from a possessor, he may acquire title in ten years, as opposed to the twenty years required for adverse possession by prescription. Code 1975, § 6-5-200. See,
 
 Long v. Ladd,
 
 273 Ala. 410, 142 So.2d 660 (1962).”
 

 Kerlin v. Tensaw Land & Timber Co.,
 
 390 So.2d 616, 618 (Ala.1980).
 

 
 *209
 
 “To determine whether an adverse claimant’s acts were ‘a sufficient indication to all the world that [he] claimed ownership of the property in question ... we must look collectively to all the possessory acts of the claimant.’
 
 Hurt v. Given,
 
 445 So.2d 549, 551 (Ala.1983). An adverse possessor need only use the land ‘in a manner consistent with its nature and character — by such acts as would ordinarily be performed by the true owners of such land in such condition.’
 
 Hand v. Stanard,
 
 392 So.2d 1157, 1160 (Ala.1980).”
 

 Drennen Land & Timber Co. v. Angeli,
 
 475 So.2d 1166, 1172 (Ala.1985). “The law is well settled that when a party claims title to land by adverse possession, the presumption is in favor of the record owner and a heavy burden of proof rests on the one claiming by adverse possession. Clear and convincing proof is required.”
 
 Morrison v. Boyd,
 
 475 So.2d 509, 512 (Ala.1985).
 

 The property is uninhabited and primarily woodland. It is bisected by Bankston Creek, which runs east to west; the portion of the property lying north of Bank-ston Creek is swampy. The property is surrounded by woodlands.
 

 Jerold maintains that Aubrey established actual, exclusive, open, notorious, and hostile possession of the property for a 20-year period following the execution of the 1934 deed. However, in the 1965 deed, Aubrey conveyed whatever ownership interest he had in the property to Lowrey, acting as trustee of the Trust. Therefore, it is irrelevant whether Aubrey established adverse possession of the property before the 1965 deed was executed. Regarding the period after the execution of the 1965 deed, the record contains mortgages, dated 1969, 1970, and 1971, executed by Aubrey. In those mortgages, the property, along with other properties, is listed as collateral. In 1971, Aubrey and his wife executed an “oil, gas and mineral lease” purportedly leasing the property and other properties to the Shenandoah Oil Company. That lease stated that it had a “primary term” of 10 years and provided that the property was being leased “for the purpose of investigating, exploring, prospecting, drilling and mining for and producing oil, gas and all other minerals” located on the property. The record does not indicate that oil, gas, or minerals were ever removed from the property. The property was assessed in Aubrey’s name from 1965 through 1987.
 

 “As a starting point, there must be physical possession of some type in order to meet the actual possession requirement” for adverse possession. 16
 
 Powell on Real Property
 
 § 91.03 (June 2008). “ ‘Actual possession is the same as
 
 pedis possessio
 
 or
 
 pedis positio;
 
 and these mean a foothold on the land, and actual entry, a possession in fact, a standing upon it, as a real demonstrative act done.’ ”
 
 Stevenson v. Anderson,
 
 87 Ala. 228, 231, 6 So. 285, 286 (1889) (quoting
 
 Churchill v. Onderdonk,
 
 59 N.Y. 134 (1874));
 
 see also Southern Ry. v. Hall,
 
 145 Ala. 224, 226, 41 So. 135, 136 (1906) (stating that actual possession is synonymous with
 
 pedis pos-sessio
 
 and exists when property is in the immediate occupancy of a party). The record does not establish that Aubrey or Jerold ever performed any acts constituting physical possession of the property. Neither Jerold nor Aubrey actually possessed the property. Therefore, Jerold could not establish title to the property by virtue of adverse possession by prescription. Accordingly, the trial court erred in submitting to the jury Jerold’s ejectment claim, which was based in part on his claim to own the property through adverse possession by prescription.
 

 The trial court erred in reforming the 1934 deed and the 1965 deed and in sub
 
 *210
 
 mitting Jerold’s ejectment claim to the jury. We reverse the judgment of the trial court, and we remand the case to the trial court for proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
 

 MOORE, J., concurs in the result, without writing.
 

 [1]
 

 . As noted, Aubrey died in 1978. Evidence in the record indicates that, after Aubrey's death, Jerold paid the taxes on the property through 1987.