WOODALL, Justice.
 

 Bruce S. Payne appeals from a judgment on the pleadings in his action against Mutual Savings Life Insurance Company (“Mutual”) based on Mutual’s nonpayment of alleged policy benefits. We affirm.
 

 I. Factual and Procedural Background
 

 According to the undisputed facts, Payne purchased a “Cancer Plus Special Disease Policy” from Mutual in 1996 (“the policy”). Under its “schedule of specified benefits,” the policy listed the following two pertinent benefit provisions:
 

 “RADIATION AND CHEMOTHERAPY BENEFIT: The usual and customary
 
 charge made by the Hospital or Doctor
 
 for radiotherapy and chemotherapy in the treatment of Cancer, but not to exceed $550 in any one day [hereinafter referred to in this opinion as ‘the doctor clause’].
 

 “PRESCRIPTION DRUG BENEFIT: The usual and customary
 
 charge for prescription antineoplastic drugs,
 
 but not to exceed $8,000 in any one calendar year [hereinafter referred to in this opinion as ‘the pharmacy clause’].”
 

 (Emphasis added.)
 

 In June 2007, Payne was diagnosed with cancer and began receiving “Gleevee,” which he procured from pharmacies by prescriptions at a price of $658.82 a week, as a regimen of “oral chemotherapy.” He filed a claim with Mutual under the policy and began receiving benefits. Throughout the rest of 2007 and 2008, Mutual paid all the submitted charges for Gleevee. In 2009, however, Mutual ceased paying bene
 
 *110
 
 fits for Gleevec once the charges exceeded $8,000.
 

 On September 22, 2009, Payne sued Mutual. Although his complaint contained seven counts, each count had at its core an allegation that Mutual had wrongfully denied benefits for the cost of Gleevec once the amount had exceeded $8,000. Payne subsequently amended his complaint to add a claim for reformation of the policy pursuant to Ala.Code 1975, § 8-1-2. Mutual answered the initial complaint and filed a motion for a judgment on the pleadings, which the trial court granted. The trial court’s judgment stated, in pertinent part:
 

 “All of [Payne’s] claims in this case arise from a policy of cancer insurance issued by [Mutual] to [Payne]. Within that policy is a clear and unambiguous provision that limits [Mutual’s] obligation for prescription medications to a total of $8,000 in any calendar year.... The court is satisfied ... that [Payne’s] allegations do not create genuine issues of material disputed fact and that a judgment is due to be granted on the pleadings.”
 

 From that judgment, Payne appealed.
 

 II. Discussion
 

 “Rule 12(c)[, Ala. R. Civ. P.,] allows a party to move for a judgment on the pleadings. When such a motion is made, the trial court reviews the pleadings filed in the case and, if the pleadings show that no genuine issue of material fact is presented, the trial court will enter a judgment for the party entitled to a judgment according to the law.”
 

 B.K.W. Enters., Inc. v. Tractor & Equip. Co.,
 
 603 So.2d 989, 991 (Ala.1992). “A court reviewing a judgment on the pleadings accepts the facts stated in the complaint as true and views them in the light most favorable to the nonmoving party.”
 
 Universal Underwriters Ins. Co. v. Thompson,
 
 776 So.2d 81, 82 (Ala.2000). Review in this Court is
 
 de novo. Id.
 

 A. The Initial Complaint
 

 The dispositive issue raised by the initial complaint is whether charges for Gleevec are reimbursable under the doctor clause, as Payne contends, or under the pharmacy clause — with its $8,000 per year limitation — as Mutual contends. In other words, Payne’s case depends on whether there is any factual dispute as to that issue. We conclude that there is not.
 

 In so concluding, we reject Payne’s argument that the fact that Mutual’s payments from Gleevec exceeded $8,000 for 2007 and 2008 demonstrate an ambiguity in the policy. “The question whether a contractual term is ambiguous or unambiguous is a
 
 question of law
 
 for the court to decide.”
 
 Hamilton v. Employees’ Retirement Sys. of Alabama,
 
 14 So.3d 839, 843 (Ala.2009) (emphasis added). “[C]overage under an insurance policy
 
 cannot be created or enlarged by waiver or estoppel
 
 and, if there is no ambiguity, it is the duty of the court to enforce the policy as written.”
 
 Home Indem. Co. v. Reed Equip. Co.,
 
 381 So.2d 45, 51 (Ala.1980) (emphasis added). Regardless of why Mutual’s payments for Gleevec before 2009 exceeded $8,000 per year, both clauses are perfectly clear: the doctor clause, with its $550 per day limit, applies to charges for chemotherapy administered by a doctor or hospital; the pharmacy clause applies to charges for a chemotherapy drug dispensed as a prescription drug through a pharmacy. That Gleevec is of the latter variety is without dispute. Indeed, the complaint alleges that, as a result of Mutual’s nonpayment of certain charges for Gleevec incurred in 2009, “Payne incurred a
 
 pharmacist bill
 
 in the amount of [$7,417.89].” (Emphasis added.)
 
 *111
 
 Thus, the pleadings with respect to the initial complaint fail to reveal any factual dispute precluding a judgment on the pleadings.
 

 B. Reformation
 

 The same can be said with respect to the reformation count contained in the amended complaint. That pleading alleged that “[i]t was the intent of the parties at the time of the
 
 filing of the claim
 
 to provide insurance coverage for Payne in the manner which Mutual ha[d]
 
 heretofore paid the claim.”
 
 (Emphasis added.) Based on that allegation, Payne sought reformation, pursuant to § 8-1-2, “to provide full coverage.”
 

 The reformation claim is fatally flawed as a matter of law. Section 8-1-2, Ala.Code 1975, provides:
 

 “When, through fraud, a mutual mistake of the parties or a mistake of one party which the other
 
 at the time
 
 knew or suspected, a written contract does not truly express the intention of the parties, it may be revised by a court on the application of the party aggrieved so as to express that intention, so far as it can be done without prejudice to the rights acquired by third persons in good faith and for value.”
 

 (Emphasis added.) “This statute is merely declaratory of the established principle applicable to the reformation of instruments.”
 
 American Liberty Ins. Co. of Birmingham v. Leonard,
 
 270 Ala. 17, 21, 115 So.2d 470, 473 (1959)(speaking of predecessor statute). The law is well established that, for purposes of contract reformation, the pertinent inquiry is what the parties had “agreed upon
 
 at the time
 
 the instruments were
 
 executed.” Jim Walter Homes, Inc. v. Phifer,
 
 432 So.2d 1241, 1244 (Ala.1983) (second emphasis added). See also
 
 Federated Guar. Life Ins. Co. v. Painter,
 
 360 So.2d 309, 311 (Ala.1978) (“Since the plaintiffs basis for reformation is grounded upon a mutual mistake of the parties, he had the burden of proving by such evidence as would meet those tests that there had been a meeting of the parties’ minds on his version of their contract at the time that contract was made.”);
 
 Behan v. Friedman,
 
 218 Ala. 513, 515, 119 So. 20, 21 (1928).
 

 The period relevant to Payne’s reformation claim is 1996, that is, when the
 
 policy was issued,
 
 not 11 years later, as Payne contends, when he began receiving benefits, or 13 years later, when some of his claims for Gleevec were denied. Payne does not allege any fraud or mistake of fact relating to the
 
 execution of the policy.
 
 Thus, the pleadings reveal no basis for the application of § 8-1-2.
 

 III. Conclusion
 

 In conclusion, the trial court did not err in entering a judgment on the pleadings. That judgment is, therefore, affirmed.
 

 AFFIRMED.
 

 COBB, C.J., and SMITH, PARKER, and SHAW, JJ., concur.