This is an appeal from a judgment of the Circuit Court, Tenth Judicial Circuit, Bessemer Division. The trial court held that plaintiff, Eastwood Baptist Church ("Eastwood") was the holder of legal title to certain riverfront property, subject to certain equitable interest, and ordered the property sold and the proceeds held to satisfy a mortgage of City Federal Savings and Loan Association ("City Federal") and to satisfy Sara Green's equitable mortgage on the property. Defendants, Green and James R. Irwin, seek reversal based on a contention that Eastwood paid nothing toward the purchase price and would, therefore, be unjustly enriched by the holding that it owned the property. We affirm.
The facts reveal that Irwin, interim pastor of Eastwood from the early 1960's through 1975, was involved in a Christian radio ministry known as the Radio School of the Bible ("RSB"). He also operated a cabinet business and distributed newspapers. Eastwood made contributions of $50.00-$100.00 per week to RSB in lieu of paying Irwin a salary.
Following the death of his son, David, in 1972, Irwin located property on the Warrior River, known as the Manley Vines Estate and negotiated with Hershel Vines, the estate's executor, to buy the land for $66,000.00. A contract was signed and Irwin paid earnest money of $1,000.00; this was money he had received as insurance proceeds after his son's death. Irwin attempted, but failed, to gain credit approval to *Page 720 
buy the property. Instead, City Federal agreed to lend money to Eastwood. After protracted discussion, Eastwood borrowed the money, executed a mortgage, and took a deed to the property, which Irwin agreed to run as a camp and recreational facility for Eastwood and for such other undertakings as he deemed appropriate. Although Irwin asked that Eastwood deed the property to him after the mortgage had been satisfied, nothing presented to the trial court showed that Eastwood agreed to Irwin's request.
City Federal approved a loan to Eastwood of $50,000.00 but retained $10,000.00 in escrow as share collateral, with interest on the share collateral to be paid twice annually. The loan was secured by the mortgage on the real estate. A net of $38,035.64 was actually made available to the seller from the City Federal loan. Irwin borrowed another $5,000.00 from his son John, a loan which was subsequently paid from the RSB account.
The balance of the funds needed to buy the land was obtained by Irwin from Green, who asked Green to lend the church a total of $21,636.74. At the time Green provided the funds, she was not given a note or mortgage. After closing, Irwin moved onto the property, which he renamed Camp David, and, with the help of church members and other interested persons, began making improvements to the cabins and other facilities on the property. Money for cabin rentals was paid to RSB through Eastwood, as were the share collateral interest payments made to Eastwood by City Federal.
Dispute over use of the camp for a ministry for prisoners and alcoholics led to the withdrawal of interest by some Eastwood members. Green, on the advice of counsel, sought security for her loan of $21,636.74 and was given a promissory note by Irwin for $21,500.00, allegedly on Eastwood's behalf. Subsequently, Eastwood gave Green a mortgage on Camp David for $21,500.00. Although Irwin left Eastwood in 1975 as interim pastor, he continued to run the camp, and mortgage payments were made from the RSB account. In May 1980, Irwin told Green he would make no further mortgage payments on the property and that Green could assume his interest. Green assumed the payments to City Federal in May 1980, and continued making them through August 1981, at which time Eastwood began making the monthly payments. The source or sources of the money for the mortgage payments is uncertain, the court concluded, except that most were drawn on the RSB account. The RSB account was comprised of funds from various sources.
Eastwood, Green, and Irwin, the court found, entered into the original transaction for the express purpose of providing "a project whereby the Church and its members and Irwin's ministries could have a place for Christian recreation."
The case was heard on June 11 and 12, 1984, on Eastwood's bill for declaratory judgment and on both appellants' counterclaims and cross-claims. On January 3, 1985, the trial court ruled that Eastwood had legal title to the property, based upon the evidence presented and the law, subject to the mortgage of City Federal. Irwin was unable to prove that he paid more than $1,000.00 toward the purchase of the property, the court said, and he had received free use of the property for more than six years. No evidence was produced, the court concluded, that Irwin had used his own money to make mortgage payments to City Federal; therefore, his claim to an interest in the property was denied.
Although the court found that Green's mortgage, filed in 1974 and refiled in 1982, was not properly executed and was, therefore, invalid, and further found that it failed for want of consideration, the court held that Green held an equitable interest in the property. Even though Eastwood's trustees were unaware of Green's contribution to the purchase price, the court said, Eastwood had placed Irwin in the position of acting as its representative and, in that capacity, he had asked for and obtained the necessary funds from Green to conclude the purchase of the land. Eastwood, as the holder of legal title, had received Green's *Page 721 
funds in trust for her, the court said, and, therefore, the court declared an equitable mortgage on her behalf, junior to the mortgage of City Federal.
The court ordered Eastwood to sell the property at a private sale and to use the proceeds to satisfy the City Federal mortgage and then to satisfy Green's equitable mortgage, determined to be $40,351.88, that figure including interest; and the court ordered that the balance of any remaining funds could be kept by Eastwood.
Green and Irwin argue that a resulting trust should have been found on behalf of each, and contend that the trial court's judgment was contrary to the evidence. In the alternative, each prays for monetary relief on the grounds that equity was not done and that Eastwood would be unjustly enriched by the trial court's judgment. We disagree.
This Court presumes correct the findings of the trial court based upon competent evidence when the evidence is presented ore tenus. "Such findings will not be disturbed upon appeal if supported by the evidence or any reasonable inference therefrom, unless they are plainly and palpably erroneous and manifestly unjust." Dennis v. Dobbs, 474 So.2d 77 (Ala. 1985),First Alabama Bank of Montgomery v. Coker, 408 So.2d 510 (Ala. 1982). The Court has further declared that where there is insufficient evidence presented to the trial court to sustain its judgment, the presumption of correctness may be rebutted and overcome. Dennis v. Dobbs, 474 So.2d 77 (Ala. 1985), FirstAlabama Bank of Montgomery v. Coker, 408 So.2d 510 (Ala. 1982).
Irwin could not produce proof to substantiate his claim that he had invested more than the $1,000.00 earnest money. His allegation that Eastwood held legal title to the property only for convenience, and that Eastwood was never the intended owner, is disputed by the testimony of Charles Matthews, Lamar Hughey, and John Ellis, all church members who were present when the purchase was discussed with Eastwood. Each signed a $5,000.00 promissory note at closing, as did other church members, to guarantee payment of the City Federal loan. Each testified to his understanding that the property was owned by Eastwood, not Irwin, and that no agreement was made to deed the property to Irwin at any time. Irwin's role, they testified, was to run the camp for Eastwood and they testified that mortgage payments were to be made from rental of the cabins. Irwin having failed to prove a personal investment of more than $1,000.00, the trial court concluded that Irwin's free use of the property for more than six years was ample compensation.
Irwin argues that "equity is a court of conscience, and it is not limited to the rigid rules contained [sic] in a court of law." This is true, but it is not enough to allege fraud and unclean hands on the part of Eastwood, as Irwin has done, without proving either. "Relief in equity can only be granted on allegations and proof, and allegations, admitted and proved, are the only premises which will uphold a chancery decree."Sylvest v. Stowers, 276 Ala. 695, 166 So.2d 423 (1964). The trial court concluded, "[I]t is unclear how much each party has paid on the mortgage or what source each used to make up these payments. It is clear that cabin rentals have been used over the years as part of the mortgage payment and that each party has used share collateral interest in making mortgage payments."
It is true that equity treats as done that which ought to be done. The testimony before the trial court supports the conclusion that equity was done. This Court has no basis for disturbing the trial court's finding that Irwin's claim should be denied.
The trial court also found that Green held an equitable interest in the property to the extent of $40,351.88, an amount equal to her proven investment plus interest. As distinguished from the claim of Irwin, Green's contribution of $21,636.74 was traceable to her personal funds.
Green argues that a resulting trust should have been found on her behalf, that *Page 722 
Eastwood would be unjustly enriched by being found to be the owner, and that Eastwood failed to do equity itself even while seeking a declaratory judgment in a court of equity. The ore tenus rule, cited previously, binds this Court to accept the findings of the trial court in the absence of a showing that the court's findings are "plainly and palpably erroneous and manifestly unjust." Dennis v. Dobbs, 474 So.2d 77 (Ala. 1985),First Alabama Bank of Montgomery v. Coker, 408 So.2d 510 (Ala. 1982). Green has failed to overcome the presumption of correctness accorded the findings of the trial court.
The trial court found that the testimony supported the finding that Irwin handled all details of the closing on behalf of Eastwood and that the church trustees were unaware, at the closing, that Green was the source of any purchase money. No evidence of any indebtedness to Green was given her at the closing, nor was her loan discussed.
Despite its finding that Green's mortgage was not properly executed (see Code of Alabama 1975, § 35-4-20), and failed for want of consideration, the court held that "equity must come to her aid in this situation."
Green's contention that a resulting trust should have been found in her behalf is without merit. As the court concluded, and the testimony clearly shows, she manifested no intention to become a landowner at the time of the original transaction. Green lent the money to the church without even receiving a note or mortgage for more than a year and a half after the closing. As this Court has said, where "one person advances the purchase-money of property, by way of a loan, to the vendee, and the conveyance of title is made to the latter, no trust will result in favor of the one who thus advances the money. The very act of a loan contradicts and rebuts the implication of a trust which might otherwise be presumptively raised by law." Noland v. Sanders, 273 Ala. 459, 461, 142 So.2d 883, 885
(1962); Whaley v. Whaley, 71 Ala. 159, 162 (1881).
Neither has Green successfully discredited the court's ruling that Eastwood should receive any balance that might remain after the City Federal mortgage is satisfied and after satisfaction of Green's equitable mortgage. Green argues that Eastwood paid nothing toward the purchase price.
As the court concluded, the amounts paid by each of the parties and the sources of payments were not clearly ascertainable from the testimony presented. Green claims that Eastwood contributed nothing toward the purchase of the land and would, therefore, be unjustly enriched by the judgment; however, the court heard testimony that money from cabin rentals and share collateral interest from City Federal were used for mortgage payments. The court also found that Eastwood has made all mortgage payments since August 1981.
Green contends that Eastwood was bound to offer restitution for her investment, upon seeking relief in a court of equity, as a condition to being granted relief. Here, however, the basic question before the court was how much, if anything, Green and Irwin had contributed. Eastwood claimed it never received any consideration from Green, and the court's finding recognizes this claim. Green's checks, one for $20,000.00 and another for $1,636.74, were not made directly to Eastwood, but were made out to the seller, Vines, and given to him by Irwin. Eastwood came before the court seeking a declaration of the "rights, duties, status and legal relations" of the parties regarding the note to Green and asked that encumbrances on the title be declared void. A party seeks a declaratory judgment because it is unsure of its rights under the law and asks the court to clarify that which is in doubt. By its judgment, the trial court did this. No evidence was produced to indicate, and the trial court did not find, that Eastwood had acted unconscionably by not offering Green restitution in advance. "The general rule is that he who seeks equity must do equity, and that is what his bill must so offer, but when the bill shows *Page 723 
that the complainant is not required to do anything in good conscience as a condition to the granting of relief, the averment of an offer to do equity is not necessary." Kimbrellv. State, 272 Ala. 419, 132 So.2d 132 (1961); Sykes v. Sykes,262 Ala. 277, 78 So.2d 273 (1955). The trial court found that Green was entitled to an equitable mortgage in the amount of $40,351.88, but until that determination was made, the nature and validity of Eastwood's obligation to Green, if any, was uncertain.
On the basis of testimony and other evidence presented to the trial court, we must conclude that the court's findings are supported by the evidence. Accordingly, this Court must presume correct the findings of the trial court, which are based at least in part on ore tenus evidence. The judgment of the trial court is, therefore, affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and STEAGALL, JJ., concur.