[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 431 
This appeal and cross-appeal arise out of a dispute between a father and son concerning the ownership of real property on which the son operates a business. Both parties challenge the judgment of the trial court entered after a bench trial. The appellants, Vincent Fadalla and Fadalla's Auto Air and Detail, Inc., appeal from the trial court's order reforming a deed on the grounds of mutual mistake and awarding back rent to George Fadalla. The cross-appellants, George Fadalla and Elouise Fadalla, appeal from the trial court's order insofar as it holds that a lease on the property had not been terminated. As to the appeal, we affirm in part, reverse in part, and remand. As to the cross-appeal, we affirm.
 Facts and Procedural History
Before 1993, Vincent Fadalla ("Vince") owned and operated an automobile air conditioning and detailing business in Mobile. His father, George Fadalla ("George"), maintained the financial books for the business. In 1993, Vince negotiated an agreement to purchase real property for his business ("the Airport Boulevard property"). Vince agreed to purchase the Airport Boulevard property for $100,000; the purchase agreement was subject to the condition that Vince obtain financing within 60 days. Vince asked his father to help him obtain financing for the Airport Boulevard property, and George agreed to allow his credit to be used for the purchase. George and Vince secured a loan from SouthTrust Bank for the purchase, and on October 4, 1993, George and Vince purchased the Airport Boulevard property. Vince provided $25,000 for the down payment, and the rest of the purchase price was paid through the loan from South-Trust *Page 432 
Bank. SouthTrust Bank insisted that both George and Vince become co-owners of the property; therefore, George and Vince signed the installment note for the property, and the deed was conveyed to George and Vince, as joint owners.
The deed to the property stated that George and Vince would take title to the property "as tenants in common with equal rights and interest, for the period or term that said Grantees shall both survive, and unto the survivor of the said Grantees at the death of the other." James Brooks, the attorney who prepared the deed, testified that it was his practice to use this language in all deeds conveyed to multiple grantees unless the person requesting the deed specified otherwise.
After George and Vince purchased the Airport Boulevard property, Vince formed a corporation, Fadalla's Auto Air and Detail, Inc. ("Auto Air"), that would operate on the newly acquired property. Auto Air made all of the mortgage payments on the property as they became due.
In April 1994, Auto Air constructed a metal building for the price of $165,000 to house its business operations on the Airport Boulevard property. The cost of constructing the building was financed through Southland Bank, and the financing for the building construction accompanied a refinancing of the loan secured by the mortgage on the real property. Vince, George, and George's wife, Elouise Fadalla ("Elouise"), executed an agreement with the Small Business Administration ("SBA") to guarantee the loan from Southland Bank. The SBA loan agreement required a guarantee from Vince, a mortgage on the Airport Boulevard property, a guarantee from George and Elouise, and security from George and Elouise. George and Elouise offered another parcel of real property, also located in Mobile, as security for the refinancing loan. In addition, under the terms of the SBA loan agreement, Southland Bank and the SBA required George and Vince to lease the property to Auto Air. The lease period began on April 1, 1994, with George and Vince as lessors and Auto Air as lessee. The term of the lease was 25 years and the annual rent was $3,000 payable by Auto Air in monthly installments of $250 per month.
After the construction of the metal building and the start of the lease, Auto Air continued to pay the mortgage payments on the refinanced loan. Vince worked full-time for Auto Air and George continued to do the bookkeeping for the business.
In September or October 1996, George and Vince had a dispute over the proportion of stock each of them owned in Auto Air. George quit keeping the books for Auto Air; he alleges that Vince had "fired" him and had banned him from the Airport Boulevard property. George sent Auto Air a letter on October 16, 1996, stating that because it was in default in the rent due under the lease, the lease agreement was "null and void." George also demanded possession of the premises and instructed Auto Air to vacate the premises immediately.
On May 23, 1997, George and Elouise filed an action against Vince and Auto Air seeking a declaration of the ownership rights in Auto Air, claiming that they had an agreement with Vince pursuant to which George owned 50% of Auto Air. George and Elouise also alleged that Auto Air had not been making the rental payments required under the lease agreement between Auto Air, as lessee, and George and Vince, as lessors. Lastly, George and Elouise sought possession of the Airport Boulevard property.
George and Elouise filed a motion to bifurcate the issues for trial. They requested *Page 433 
that the trial court hold one trial to determine the parties' ownership interests in Auto Air and a second trial to resolve the issues surrounding the Airport Boulevard property, including issues related to the lease. The trial court granted the motion to bifurcate. The first trial was held on February 21, 2002, and a jury found that Vince was the sole owner of Auto Air.
George and Elouise amended their complaint on April 18, 2002, seeking to have the original deed for the Airport Boulevard property reformed because of mutual mistake. On June 18, 2002, Vince and Auto Air filed an amended counterclaim. In the amended counterclaim, Vince and Auto Air sought to impose a constructive trust on the Airport Boulevard property. The amended counterclaim alleged that a constructive trust was appropriate because Auto Air had made all of the mortgage payments on the Airport Boulevard property and George had not made any of the mortgage payments.
George sent another letter to Auto Air on November 15, 2002, stating that Auto Air remained in default under the terms of the lease because of its failure to pay the rent. The letter also stated that "George Fadalla, as Lessor, has elected to terminate" the lease and that Auto Air had to vacate and deliver possession of the property to George within 10 days of the date of the letter.
A bench trial was held on October 14, 2003, to resolve the remaining issues in the case. The trial court held that a mutual mistake had occurred in the creation of the deed to the Airport Boulevard property and ordered that the deed be reformed. The trial court found that the true intent of the parties was to create a joint tenancy with a right of survivorship rather than concurrent life estates with cross-contingent remainders as Vince and Auto Air argued; therefore, the trial court ordered that the deed be reformed to reflect this intent. The trial court also found that the lease had not been terminated and ordered that Auto Air pay George $7,379 in back rent.
Vince and Auto Air filed a notice of appeal on January 15, 2004. On January 27, 2004, George and Elouise filed a notice of cross-appeal. On February 10, 2004, Vince and Auto Air filed a motion to dismiss George and Elouise's cross-appeal.
 Standard of Review
"[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust." Philpot v. State,843 So.2d 122, 125 (Ala. 2002). "`The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.'" Waltman v. Rowell, 913 So.2d 1083, 1086 (Ala. 2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala. 1985)). "Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge's conclusions of law or the incorrect application of law to the facts." Id.
 Discussion I. Vince and Auto Air's Appeal (no. 1030695) A.
Vince and Auto Air argue that the trial court erred in reforming the deed to change the joint ownership arrangement. Specifically, Vince and Auto Air argue that reforming the deed was improper because, they say, there was insufficient evidence of a mutual mistake of the parties. *Page 434 
The parties stipulated in the trial court that the original deed for the Airport Boulevard property created "concurrent life estates with cross-contingent remainders in fee; or a tenancy in common for life with a contingent remainder in favor of the survivor." Durant v. Hamrick, 409 So.2d 731, 736 (Ala. 1981). This type of property interest, recognized by this Court inDurant, creates a right of survivorship that is indestructible by the acts of one of the concurrent owners. 409 So.2d at 737
("The power to defeat the survivorship interest does not extend to cotenants who hold concurrent life estates with contingent remainders. The contingent remainder held by a cotenant cannot be defeated by the other."). George requested that the trial court reform the deed to create a joint tenancy with a right of survivorship. In contrast to the property interest created by the original deed in this case, a joint tenancy with a right of survivorship can be unilaterally destroyed by the acts of one of the owners, thereby defeating the survivorship interest in the property. Id. See also Nunn v. Keith, 289 Ala. 518, 524,268 So.2d 792, 797 (1972) (holding that a tenancy in common is created and the joint tenancy is destroyed when one joint tenant sells his or her interest in the property). The trial court ruled in favor of George and Elouise and ordered the deed reformed to create a joint tenancy with a right of survivorship.
"The general rule in Alabama is that a court may exercise its equitable powers to reform a deed to make it conform to the intention of the parties." Powell v. Evans, 496 So.2d 723, 725
(Ala. 1986); Clemons v. Mallett, 445 So.2d 276, 278 (Ala. 1984). One of the grounds for reformation of a deed is mutual mistake of the parties. Long v. Vielle, 549 So.2d 968, 970-71
(Ala. 1989). A mutual mistake exists when the parties have entered into an agreement, but the deed does not express what the parties intended under the agreement. Daniels v. Johnson,539 So.2d 259, 260 (Ala. 1989). In determining whether a mutual mistake exists, "[t]he initial factual question is, of course, what the parties intended the instruments to express at the time they were executed." Jim Walter Homes, Inc. v. Phifer,432 So.2d 1241, 1242 (Ala. 1983) (citing Behan v. Friedman,218 Ala. 513, 119 So. 20 (1928)). However, the trial court "`cannot make a new [instrument] for the parties, nor establish that as a[n] [instrument] between them, which it is supposed they would have made, if they had understood the facts.'" 432 So.2d at 1242
(quoting Holland Blow Stave Co. v. Barclay, 193 Ala. 200, 206,69 So. 118, 120 (1915)). See also Beasley v. Mellon Fin. Servs.Corp., 569 So.2d 389, 393 (Ala. 1990) ("The trial court cannot make the instrument express a new contract for the parties."). The mistake must also be mutual as to all parties to the instrument. Palmer v. Palmer, 390 So.2d 1050, 1053 (Ala. 1980) ("Where it appears that by a mutual mistake of all parties the instrument does not conform to or express their intention or agreement, . . . relief may be had in equity. . . ."). See alsoMarx v. Long, 631 So.2d 983, 988 (holding that the mutual mistake must be as to all parties to the instrument); Beasley,569 So.2d at 394 ("[T]he mistake must be mutual as to all of the parties. . . .").
"`[T]here is a presumption arising from the instrument itself supporting it as the true agreement.'" Marx, 631 So.2d at 988
(quoting Phifer, 432 So.2d at 1243). To rebut this presumption, the party seeking reformation must produce clear, convincing, and satisfactory evidence that the deed does not express the true intentions of the parties at the time the instrument was created.Hollis v. Cameron, 572 So.2d 439, 441 (Ala. 1990); Daniels, *Page 435 
539 So.2d at 260; Powell, 496 So.2d at 726. In addition, the party seeking reformation must produce clear, convincing, and satisfactory evidence of what the parties actually intended the writing to express. See Powell, 496 So.2d at 726; Clemons,445 So.2d at 279; Fields v. Phelps, 668 So.2d 856, 858
(Ala.Civ.App. 1995). "`"If the proof is uncertain in any material respect, it will be held insufficient; and, while the courts may feel a great wrong has been done, they cannot grant relief by reason of uncertainty."'" Phifer, 432 So.2d at 1243 (quotingHammer v. Lange, 174 Ala. 337, 340, 56 So. 573, 573 (1911)) (citation omitted). See also Whittemore v. Varner,607 So.2d 142, 145 (Ala. 1992).
To reform a deed, Alabama caselaw requires evidence of the intent of all parties to the instrument. Palmer,390 So.2d at 1053. Neither party in this case provided any evidence as to the intent of the grantor of the deed. However, even if the parties had provided evidence showing the intent of the grantor, there is no evidence indicating that both George and Vince intended to take title to the property as a joint tenancy with a right of survivorship. George alleged that he never intended to take title to a concurrent life estate with cross-contingent remainders because, he says, this type of property interest would not allow him to defeat the survivorship interest. However, Vince testified that at the time of the deed execution, he wanted the indestructible survivorship arrangement.
Although George testified to his intent at the time the deed was executed, George and Elouise did not produce any evidence at trial showing that George and Vince had a meeting of the minds or that they actually entered into an agreement prior to or at the time of the deed execution as to what would happen to the property when one of them died. See Phifer, 432 So.2d at 1243
("the agreement of the minds at the time of the writing is most important"). George and Vince did not have a written agreement stipulating how they were to own the Airport Boulevard property, and it is undisputed that George and Vince never had a conversation before the closing of the original loan as to how the Airport Boulevard property would be distributed if either of them died. It is also undisputed that neither George nor Vince requested that the deed contain particular survivorship rights or read the deed before or at the closing. See Phifer,432 So.2d at 1243 ("It is equally likely, however, that such an intention was only unilateral, because of the fact that [the grantees] neither discussed nor read the instruments. . . .").
Both George and Vince testified that at the time the deed was executed, they did not understand the meaning of survivorship as it pertains to property interests or the meaning of the language in the deed that created the concurrent life estates with cross-contingent remainders. If anything, this shows only that George and Vince did not understand the language in the deed and the nature of the property interests being conveyed. George and Vince's lack of understanding of the language in the deed does not amount to clear, convincing, and satisfactory evidence that George and Vince agreed to take title to the Airport Boulevard property in the form of a joint tenancy with a destructible right of survivorship as opposed to concurrent life estates with cross-contingent remainders. In addition, the trial court cannot reform a deed based upon what it believed George and Vince would have agreed to had they "understood the facts." Phifer,432 So.2d at 1242.
George and Elouise also argue that because it was only "fortuitous" — not intentional — that the survivorship interest conveyed *Page 436 
by the deed was indestructible, reformation is proper. More specifically, George and Elouise argue that "it is completely fortuitous that Jim Brooks, the preparer of the deed, chose an indestructible survivorship clause as opposed to a destructible clause." However, evidence indicating that neither party selected the type of interest that would be conveyed in the deed does not show an intent to take title under a different type of property interest than that actually conveyed. The evidence indicating that James Brooks chose the type of deed that was conveyed does not amount to clear and convincing evidence that the parties actually intended to take title to the Airport Boulevard property in the form of a joint tenancy with a right of survivorship rather than concurrent life estates with cross-contingent remainders.
George and Elouise also argue that Vince's testimony at the close of the trial provided sufficient evidence to support a finding of mutual mistake. After direct examination and cross-examination, the trial court repeatedly asked Vince if he understood how the property would be distributed if he died before his father. Vince responded that he understood that if he died before his father, the property would go to his father. He also repeatedly testified that he opposed reforming of the deed. However, Vince gave some conflicting testimony when he stated, "[S]ince I started the business and [have] been there, if I did die, I would like my son to have it." George and Elouise argue that this testimony is clear and convincing evidence that Vince did not intend the deed to convey a concurrent life estate with cross-contingent remainders because, they say, such an intent would not permit Vince to leave the property to his son if he predeceased George. However, this testimony does not provide any evidence as to what Vince intended when the deed was executed.Phifer, 432 So.2d at 1243 (holding that there must be clear and convincing evidence of what the parties intended "at the time ofthe writing"). In addition, immediately after Vince gave this testimony, he twice reaffirmed his position that he wanted the deed to remain in its current form. See Phifer,432 So.2d at 1243 (quoting Hammer, 174 Ala. at 340, 56 So. at 573) ("`"If the proof is uncertain in any material respect, it will be held insufficient. . . ."'").
Although there is a presumption of correctness in favor of the trial court's findings, there was no evidence showing that Vince intended to take title to the property in the form of a joint tenancy with a right of survivorship, and reformation is proper only when the mistake is mutual as to all parties. A trial court's findings based on ore tenus evidence "will not be disturbed on appeal unless there is a clear showing that the findings are plainly and palpably wrong, with no evidence to support them." Adams v. Robertson, 676 So.2d 1265, 1270 (Ala. 1995). "The Court has further declared that where there is insufficient evidence presented to the trial court to sustain its judgment, the presumption of correctness may be rebutted and overcome." Green v. Eastwood Baptist Church, Inc.,496 So.2d 718, 721 (Ala. 1986). See also Cahaba Veneer, Inc. v. VickeryAuto Supply, 516 So.2d 670, 674 (Ala.Civ.App. 1987) (holding that the ore tenus rule does not shield a trial court's judgment when no evidence exists to support the judgment). Because there was no evidence showing that Vince intended the deed to convey a joint tenancy with a right of survivorship, the ore tenus presumption of correctness has been overcome. Green,496 So.2d at 721; Cahaba Veneer, 516 So.2d at 674. Therefore, the finding of the trial court that there was a mutual mistake of fact is not supported by the evidence *Page 437 
and, therefore, its judgment based on that finding was plainly and palpably erroneous.[2]
 B.
Finally, Vince and Auto Air appeal from the trial court's award of back rent to George. The trial court ruled that under the terms of the lease agreement between George and Vince, as lessors, and Auto Air, as lessee, Auto Air owed George $7,379 in back rent. Vince and Auto Air contend that the trial court improperly calculated the amount of back rent awarded to George because, they say, the trial court erred in refusing to admit certain testimony and evidence demonstrating the amount of rental payments under the lease agreement. At trial, the court sustained George and Elouise's objection to the introduction of this evidence because it violated provisions of a "General Pre-Trial Order" issued by the trial court.
"Agreements and stipulations made in a pre-trial order are binding on the parties and control the subsequent course of the action." Osborne Truck Lines, Inc. v. Langston, 454 So.2d 1317,1330 (Ala. 1984). "Under Rule 16, Ala. R. Civ. P., [a pretrial] order controls the subsequent course of the action. The parties are bound by the pretrial order. . . ." USA Petroleum Corp. v.Hines, 770 So.2d 589, 595 (Ala. 1999). A trial court's decision to allow or disallow evidence based on a party's noncompliance with a pretrial order will not be reversed unless in making that decision the trial court has exceeded its discretion. Vesta FireIns. Corp. v. Milam Co. Constr., 901 So.2d 84, 105 (Ala. 2004); USA Petroleum Corp., 770 So.2d at 595.
The parties in this case were bound by a pretrial order requiring each party to make all exhibits to be used at trial available to the opposing party no less than 21 days before the trial. The order also stipulated that any exhibits not made available as required under the order would not be admitted into evidence. At trial, Vince and Auto Air sought to introduce some of Auto Air's ledger books into evidence. However, the trial court ruled that these ledger books had not been made available or identified as evidence that would be used as exhibits during trial; thus, they were barred by the pretrial order. Because Vince and Auto Air's attempt to introduce the ledgers was a violation of the terms of the pretrial order, the trial court did not exceed its discretion in refusing to allow the introduction of the ledger books.
 II. George and Elouise's Cross-Appeal (no. 1030696)
George and Elouise argue that the trial court erred in declaring that the lease on the Airport Boulevard property had not been terminated and in failing to award George and Elouise the fair-market rental value of the property from the date of the alleged default in rental payments.
The lease agreement in this case contained a termination provision giving the "Lessor" — George and Vince — the option to "declare the entire contract null and void, and to demand and retake possession of the premises" upon the lessee's "non-payment of rent." George attempted unilaterally to exercise the option to terminate the lease by sending two letters to Auto Air stating that he was terminating *Page 438 
the lease because of Auto Air's failure to make rental payments. Vince and Auto Air argue that under this Court's holding in SunOil Co. v. Oswell, 258 Ala. 326, 62 So.2d 783 (1953), George could not unilaterally terminate the lease entered into by both George and Vince as lessors. George and Elouise, however, argue that the facts in Sun Oil are distinguishable from the facts of this case. We do not need to address these arguments because it was not error for the trial court to find that the terms of the lease itself express the intention of the parties as to termination of the lease.
"General rules of contract interpretation require that the intent of the parties be derived from the words of the contract, unless an ambiguity exists." Ryan Warranty Servs., Inc. v.Welch, 694 So.2d 1271, 1273 (Ala. 1997). "Additionally, a contract is to be construed in its entirety and not solely on a single provision." Id. The termination provision in the lease agreement gave the "Lessor" the option to terminate the lease if the lessee defaulted on the rent payments. The lease defined the "Lessor" of the property as both George and Vince, and the terms of the lease did not specify whether either George or Vince could act independently to terminate the lease. George and Elouise have not demonstrated that, in construing the termination provision in the context of the lease as a whole, the trial court erred in concluding that the provision allowing the "Lessor" to terminate the lease upon default because of a failure to make the rental payments required action by both George and Vince. Thus, George and Elouise have not demonstrated that the trial court erred in declaring that George's letters to Auto Air had not effected a termination of the lease.[3]
 Conclusion
We affirm the trial court's ruling that the lease had not been terminated, and we affirm the trial court's award of unpaid rent to George and Elouise. However, we conclude that George and Elouise did not meet their burden of showing that the deed should be reformed due to a mutual mistake; thus, the trial court erred in reforming the deed. We therefore reverse the portion of the trial court's order reforming the deed and remand this case for proceedings consistent with this opinion.
1030695 — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
1030696 — AFFIRMED.
NABERS, C.J., and LYONS, WOODALL, and PARKER, JJ., concur.
[2] Vince and Auto Air also argue that if this Court holds that the trial court did not err in reforming the deed, then we should hold that the trial court should have imposed a constructive trust upon the property. Because we find that the trial court erred in reforming the deed, we pretermit discussion of that issue.
[3] In light of our holding that the trial court did not err in finding that the lease had not been terminated, Vince and Auto Air's motion to dismiss George and Elouise's cross-appeal is moot.