THOMAS, Judge.
Eric DeWayne Taylor appeals from the Mobile Probate Court’s denial of his motion to set aside previously entered orders of the probate court. We affirm.
Jimmy Patrick Newman died intestate on March 11, 2005, as the result of an automobile accident. On March 17, 2005, Jerry Wayne Newman, Jimmy’s brother, petitioned the probate court for letters of administration for Jimmy’s estate (“the estate”). The probate court granted Jerry’s petition and issued letters of administration for the estate appointing Jerry as administrator on March 23, 2005. The probate court included in the letters of administration a provision restricting Jerry from settling any litigation on behalf of the estate without the approval of the probate court; the estate had filed a wrongful-death action against the other party involved in the automobile accident in which Jimmy had been killed. Notice of the issuance of letters of administration was published in the Mobile Press Register newspaper for three consecutive weeks, as required by § 43-2-61(2), Ala. Code 1975. Jerry filed an inventory of the estate with the probate court on April 4, 2005; the inventory did not include the wrongful-death action, which had not yet reached a conclusion.
On May 15, 2005, Jerry moved the probate court to approve the settlement of the wrongful-death action; Jerry attached to his motion a listing of Jimmy’s “next of kin and heirs at law,” which listed Wendy Marie Newman, who was Jimmy’s daughter, along with Jimmy’s three brothers and four sisters. The probate court conducted a hearing on Jerry’s motion, at which it heard testimony from Jerry and Wendy. Jerry testified that he had retained an attorney to represent the estate in the wrongful-death action and that, through that attorney’s negotiations, the estate had reached a proposed settlement with the liable party for the policy limits of its insurance — $1,000,000. Jerry testified that he desired for the probate court to approve the settlement. The court questioned the estate’s counsel regarding his fees and expenses relating to the settlement of the wrongful-death action, which amounted to $405,448.88, leaving $594,551.12 to be distributed to the estate. Wendy testified that she desired for the probate court to approve the settlement of *111 the wrongful-death action. Wendy also testified that she had no knowledge of any other heirs. The probate court further questioned Wendy regarding the existence of other heirs:
“THE COURT: [Wendy], let me just confirm on the record here. Your father did not die with a surviving spouse, did he?
“[WENDY]: Not that I’m aware of.
“THE COURT: Okay, and you were his only child?
“[WENDY]: That I know of, yes.”
At the conclusion of the hearing, the probate court approved the settlement of the wrongful-death action.
On May 4, 2006, Jerry petitioned the probate court for a final settlement of the estate and to discharge Jerry as the administrator of the estate. In his petition, Jerry asserted that more than 6 months had passed since the probate court issued letters of administration, that it had been more than 5 months since the publication of notice of the issuance of letters of administration, and that more than 30 days had passed since actual notice had been given to all known creditors. Jerry further asserted that no claims had been filed against the estate and that all the assets of the estate had been delivered to Wendy, who, Jerry alleged, was the only heir of Jimmy. Jerry attached to his petition an affidavit of Wendy, in which she stated that she consented to the final settlement of the estate and that she had received all the assets of the estate. The probate court granted Jerry’s petition on May 8, 2006, closing the estate and discharging Jerry as the administrator of the estate.
On February 21, 2011, Taylor filed a motion to set aside the probate court’s order discharging Jerry as the administrator of the estate and to set aside its order approving the settlement of the wrongful-death action; Taylor’s motion indicated that it was brought under Rule 60(b), Ala. R. Civ. P. Taylor claimed in his motion that he was an heir of Jimmy because Jimmy was Taylor’s father.[1] Taylor further claimed:
“Jerry Wayne Newman and Wendy Marie Newman withheld or suppressed from Eric DeWayne Taylor the fact that Letters of Administration were issued on [Jimmy’s] Estate, that a claim for [Jimmy’s] wrongful death was pursued, that there was a motion and hearing on a proposed $1,000,000.00 settlement, that settlement funds were received, that this Court approved said settlement, that all the net funds were distributed only to Wendy Marie Newman, and that Jerry Wayne Newman filed a petition on Final Settlement which was granted by this Court.”
Taylor alleged that Jerry and Wendy had falsely represented to the probate court that Wendy was Jimmy’s only heir and that Jerry and Wendy knew or should have known that Taylor was also Jimmy’s heir. Taylor alleged that the probate court’s settlement of the estate was based on the allegedly false representations of Jerry and Wendy. Taylor requested that the probate court set aside its order dismissing Jerry as the administrator of the estate and its order approving the wrongful-death settlement, require Wendy to return half of the wrongful-death settlement proceeds to the probate court, and distribute those proceeds to Taylor. Taylor also requested an award against Jerry, Wendy, and Fidelity and Deposit Company of Ma *112 ryland[2] for an unstated amount of compensatory damages, punitive damages, and attorney fees.
The probate court held a hearing on Taylor’s motion on March 30, 2011, at which it heard testimony from Jerry, Wendy, Taylor, and Mary Newman, who is Taylor’s mother. Mary testified that she became pregnant by Jimmy when she was 16 years old and that Jimmy had moved away not knowing that she was pregnant. According to Mary, Jimmy returned when Taylor was approximately 10 months old; Jimmy and Mary married in August 1984, when Taylor was approximately 1 year old. Mary testified that Jimmy referred to Taylor as his son and held himself out to the community as Taylor’s father. Mary also testified that Jerry knew that Jimmy and Mary had married and that she had a child. Mary further testified that she had told Jerry that Taylor was Jimmy’s son; however, Mary stated that she did not know whether Jimmy had represented to Jerry or other members of Jimmy’s family that Taylor was his son. According to Mary, she also had told other members of Jimmy’s family that Taylor was Jimmy’s son. Mary and Jimmy divorced in April 1987. Mary testified that she had infrequent encounters with Jimmy after the divorce. According to Mary, Jimmy approached her and Taylor at a gas station when Taylor was 15 years old and introduced himself to Taylor as his father. Mary did not recall any conversations she had had with Jerry from the time that she and Jimmy divorced in 1987 until after Jimmy’s death in 2005.
According to Mary, Wendy, who is older than Taylor, also knew of Taylor’s existence because, Mary stated, Jimmy had exercised weekend visitation with Wendy during the time that Jimmy and Mary were married. Mary stated that after she and Jimmy had divorced she had once encountered Wendy at a supermarket where Wendy was then working and that, at that time, she had asked Wendy whether she remembered Taylor. According to Mary, Wendy asked whether Taylor was Mary’s son, to which Mary responded that Taylor was Wendy’s brother. Mary also stated that she had had conversations with Jimmy’s brothers and sisters in which Mary had represented that Taylor was Jimmy’s son.
Mary testified that she heard about Jimmy’s death in 2005, shortly after Jimmy’s funeral. Mary stated that she was unaware at that time of the probate proceedings or the wrongful-death action. According to Mary, she first learned of the settlement in the wrongful-death action in January 2010, when she was informed of the settlement by one of Jimmy’s sisters. Mary testified that she telephoned Jerry a few months later and that Jerry stated to Mary that he did not know that Taylor was Jimmy’s son or that Jimmy and Mary had actually been married.
Taylor testified that he was 26 years old at the time of the hearing on his motion. According to Taylor, Mary informed him of Jimmy’s death in 2005. Taylor testified that he had not had a close relationship with Jimmy. Taylor stated that, like Mary, he also recalled the conversation with Jimmy at the gas station; Taylor stated that he did not know Jimmy’s identity until Jimmy told him that Jimmy was his father. Taylor testified that he had not met Jerry until 2010, when they underwent testing to determine if Jimmy was Taylor’s father. According to Taylor, he did not find out about the probate-court *113 action or the wrongful-death settlement until 2010, when he was informed by Mary. After finding out about the wrongful-death settlement in 2010, Taylor stated that he and Mary retained counsel and initiated a paternity action in the juvenile court to legally establish Jimmy’s paternity of Taylor. Taylor stated that the paternity test had proven that Jimmy was his father.
Jerry testified that he did not know Mary well. According to Jerry, he knew that Jimmy and Mary had been involved in a relationship and that the two had lived together; however, he stated that he did not know that they had been married. Jerry also testified that Jimmy never told him that Jimmy had a son; according to Jerry, Wendy was the only child that he knew that Jimmy had fathered. Jerry testified that he did not reeall any conversations with Mary in which she told him that Taylor was Jimmy’s child until Mary telephoned him in 2010. Jerry also testified that none of his sisters had told Jerry that he should have known that Taylor was Jimmy’s child. When pressed by Taylor’s counsel regarding whether he knew that Jimmy had any children other than Wendy, Jerry responded:
“No, or may have more. I don’t know. Nobody has ever told me this young man is my brother’s son. I accept that fact. I did not know he existed. His name was not Newman. His mother never associated with us, even though she said she did way back when, I assume she had seen my brothers and sisters all along in the store, you know. I don’t know that I never met her. But, no, I did not know he had any other' children other than Wendy or anymore for that matter.”
Jerry testified that he did not investigate all of Jimmy’s former relationships to determine whether Jimmy had any additional children; Jerry stated that Wendy was the only child of Jimmy’s of which he had any knowledge.
Wendy testified that she was born in April 1978 and that Jimmy was her father. Wendy testified that she did not recall spending time with Mary and that she had not had much involvement with the New-mans. Wendy stated that she did not know whether Jimmy was at one time married to Mary. Wendy further stated that she did not recall seeing Mary before and that she had never met Taylor; according to Wendy, she did not recall the conversation in the supermarket of which Mary had testified. Wendy testified that she had not had a close relationship with Jimmy and that Jimmy had never told her that he had any other children. Wendy also testified that neither her mother nor Jimmy’s sisters had mentioned the existence of any other children.
On April 5, 2011, the probate court entered a judgment denying Taylor’s motion. Taylor appealed to the Alabama Supreme Court. Our supreme court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala.Code 1975.
“It is well established that the decision to grant or to deny relief pursuant to a Rule 60(b) motion is discretionary with the trial court. In reviewing the trial court’s ruling on such a motion, we cannot disturb the trial court’s decision unless the trial court abused that discretion in denying the motion.”
DaLee v. Crosby Lumber Co., 561 So.2d 1086, 1089 (Ala.1990) (citations omitted). However,
“ ‘[t]he standard of review on appeal from the denial [or granting] of relief under Rule 60(b)(4) is not whether there has been an abuse of discretion. When the grant or denial of relief turns on the validity of the judgment, as under Rule 60(b)(4), discretion has no place. If the judgment is valid, it *114 must stand; if it is void, it must be set aside. A judgment is void only if the court rendering it lacked jurisdiction of the subject matter or of the parties, or if it acted in a manner inconsistent with due process. Satterfield, v. Winston Industries, Inc., 553 So.2d 61 (Ala.1989).’ ”
Orix Fin. Servs., Inc. v. Murphy, 9 So.3d 1241, 1244 (Ala.2008) (quoting Insurance Mgmt. & Admin., Inc. v. Palomar Ins. Corp., 590 So.2d 209, 212 (Ala.1991)).
Taylor brought his action in the probate court by filing a motion under Rule 60(b). On appeal, he characterizes his motion as falling under Rule 60(b)(4), Rule 60(b)(6), and the provision allowing an independent action under Rule 60(b)(3).[3] “Rules 59, 59.1, and 60 of the Alabama Rules of Civil Procedure apply in probate court proceedings pursuant to § 12-13-12, Ala.Code 1975.” McGallagher v. Estate of DeGeer, 934 So.2d 391, 399 n. 2 (Ala.Civ.App.2005). Section 12-13-12 provides that the “provisions of this code in reference to ... pleading and practice, judgments and orders in the circuit court ... and of enforcing orders and judgments” apply to the. probate court only “in the absence of express provision to the contrary.”
Taylor brought this action asserting, among other claims, a claim under Rule 60(b)(3), which allows a court to entertain an independent action seeking to have a judgment or order set aside on the basis of fraud if that independent action is brought within three years of the date of the entry of the judgment or order.[4] Rule 60(b) also allows for the tolling of the time in which to file an independent action based on fraud pursuant to § 6-2-3, Ala. Code 1975.[5] However, the Probate Code, in § 43-8-5, Ala.Code 1975, provides:
“Whenever fraud has beén perpetrated in connection with any proceeding or in any statement filed under this chapter or if fraud is used to avoid or circumvent the provisions or purposes of this chapter, any person injured thereby may obtain appropriate relief against the perpetrator of the fraud or restitution from *115 any person (other than a bona fide purchaser) benefitting from the fraud, whether innocent or not. Any proceeding must be commenced within one year after the discovery of the fraud or from the time when the fraud should have been discovered, but no proceeding may be brought against one not a perpetrator of the fraud later than five years after the time of the commission of the fraud. This section has no bearing on remedies relating to fraud practiced on a decedent during his lifetime which affects the succession of his estate.”
The Commentary to § 43-8-5 notes that “[t]his is an overriding provision that provides an exception to the procedures and limitations provided in this act or otherwise in the Code of Alabama.” Thus, the express provision in § 43-8-5 displaces the provisions of Rule 60(b)(3), which would otherwise be applicable pursuant to § 12-13-12, with regard to the time limitations for the filing of an independent action challenging a judgment or order of the probate court based on an allegation of fraud.
Although Jerry and Wendy raise the issue of the statute of limitations on appeal, albeit with regard to the tolling provisions in § 6-2-3 rather than the limitations period in § 43-8-5, they did not raise the issue of the statute of limitations at any time in the probate court.
“The statute of limitations is specifically listed as an affirmative defense in A[la]. R. Civ. P. 8(c); and the rule requires that it be specially pleaded. Once an answer is filed, if an affirmative defense is not pleaded, it is waived. Robinson v. [Morse], 352 So.2d 1355, 1357 (Ala.1977). The defense may be revived if the adverse party offers no objection (Bechtel v. Crown [Central ] Petroleum Corp., 451 So.2d 793, 796 (Ala.1984)); or if the party who should have pleaded it is allowed to amend his pleading (Piersol v. ITT [Phillips ] Drill Division, Inc., 445 So.2d 559, 561 (Ala.1984)); or if the defense appears on the face of the complaint (cf., Sims v. Lewis, 374 So.2d 298, 302 (Ala.1979); and Williams v. McMillan, 352 So.2d 1347, 1349 (Ala.1977)).”
Wallace v. Alabama Ass’n of Classified Sch. Emps., 463 So.2d 135, 136-37 (Ala.1984). Because Jerry and Wendy never raised the issue of the statute of limitations in the probate court, they have waived the issue; therefore, we cannot consider whether Taylor’s action was barred by the time limitations provided in § 43-8-5.
On appeal, Taylor presents arguments pertaining to the two types of fraud defined in § 6-5-101, Ala.Code 1975, which provides: “Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud.” In Christian v. Murray, 915 So.2d 23, 28 (Ala.2005), our supreme court held that the species of fraud that the legislature intended to be considered in an action brought under § 43-8-5 “must be that kind of fraud that would allow relief for ‘fraud on a court.’ ” The Christian court noted:
“ ‘This Court has defined “fraud upon the court” as that species of fraud that defiles or attempts to defile the court itself or that is a fraud perpetrated by an officer of the court, and it does not include fraud among the parties, without more.’ Waters v. Jolly, 582 So.2d 1048, 1055 (Ala.1991) (citing Brown v. Kingsberry Mortgage Co., 349 So.2d 564 (Ala.1977), and Spindlow v. Spindlow, 512 So.2d 918 (Ala.Civ.App.1987)). Black’s Law Dictionary 686 (8th ed.2004) defines ‘fraud on the court’ as follows: ‘In a judicial proceeding, a lawyer’s or par *116 ty’s misconduct so serious that it undermines or is intended to undermine the integrity of the proceeding.’ See Ex parte Free, 910 So.2d 753 (Ala.2005). The cases in which fraud on the court has been found, for the most part, have been cases in which there was ‘the most egregious conduct involving a corruption of the judicial process itself,’ such as the bribery of a judge or the employment of counsel to improperly influence the court. 11 Charles A. Wright et al., Federal Practice & Procedure Civ.2d § 2870 (1995).”
915 So.2d at 28. Therefore, we will consider only whether the probate court abused its discretion in determining that Jerry and Wendy had not committed fraud on the court and, therefore, erred in denying Taylor’s motion.
The probate court heard conflicting evidence regarding whether Jerry knew that Taylor was Jimmy’s child. Faced with conflicting evidence, the probate court had to determine the credibility of the witnesses and what weight to give each witness’s testimony. This court is not allowed to reweigh the evidence or to determine the credibility of witnesses.
“The Alabama Supreme Court has stated that ‘the law is settled that weighing evidence is not the usual function of an appellate court. This is especially true where ... the assessment of the credibility of witnesses is involved.’ Knight v. Beverly Health Care Bay Manor Health Care Ctr., 820 So.2d 92, 102 (Ala.2001) (citation omitted). Accordingly, appellate courts in this state generally do not review evidence in order to make factual conclusions; instead, they review judgments in order to determine whether the trial court committed reversible error.”
J.C. v. State Dep’t of Human Res., 986 So.2d 1172, 1184 (Ala.Civ.App.2007). Jerry and Wendy testified that they had no knowledge that Taylor was Jimmy’s child. It was within the discretion of the probate court to assign greater weight and credibility to their testimony than to the testimony of Mary and Taylor. Because the probate court had sufficient evidence before it to support a determination that neither Jerry nor Wendy had committed fraud on the court with respect to the probate proceedings, we cannot conclude that the probate court abused its discretion when it denied Taylor’s motion.
Taylor next argues that the probate court erred in denying his motion because, he says, the orders of the probate court are void.[6] Taylor argues that the probate court’s orders are void because, Taylor says, Jerry’s failure to give Taylor notice of the probate proceedings deprived the probate court of personal jurisdiction over him.
Section 43-2-61, Ala.Code 1975, prescribes the type of notice that the administrator of an estate must give to those who have claims against the decedent. That section provides:
“Notice, as prescribed in section 43-2-60, must be given:
“(1) By first-class mail addressed to their last known address, or by other mechanism reasonably calculated to provide actual notice, to all persons, firms, and corporations having claims against the decedent, who are known or who are reasonably ascertainable by the personal representative within *117 six months from the grant of letters; and
“(2) By publishing a notice once a week for three successive weeks in a newspaper of general circulation published in the county in which the letters were granted or, if none is published in the county, in the one published nearest to the courthouse thereof or in an adjoining county.”
Taylor argues that Jerry was required to notify Taylor of Jerry’s receipt of letters of administration for the estate by first-class mail, as required by § 43-2-60(1), because, Taylor says, his identity as an heir was reasonably ascertainable.
The question whether Taylor was known or reasonably ascertainable to Jerry or Wendy as an heir is a question of fact. The probate court heard ore tenus evidence concerning whether Jerry or Wendy knew that Jimmy was Taylor’s father.
“ ‘ “ ‘[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.’ ” ’ Water Works & Sanitary Sewer Bd. v. Parks, 977 So.2d 440, 443 (Ala.2007) (quoting Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala.2005), quoting in turn Philpot v. State, 843 So.2d 122, 125 (Ala.2002)). ‘ “The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.” ’ Waltman v. Rowell, 913 So.2d 1083, 1086 (Ala.2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala.1985)). ‘Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of law to the facts.’ Waltman v. Rowell, 913 So.2d at 1086.”
Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So.2d 924, 929 (Ala.2007). The probate court heard testimony from Jerry that Jimmy had never mentioned to Jerry that he had any children other than Wendy. Jerry also testified that he had had little contact with Mary and that none of his sisters had ever mentioned to him that Taylor was Jimmy’s child. The probate court also heard testimony from Wendy that she had no knowledge of Taylor’s existence or that he was Jimmy’s child. Wendy and Jerry’s testimony was sufficient to support a determination by the probate court that Taylor was not known or reasonably ascertainable to Jerry as Jimmy’s heir. Because Taylor was not known or reasonably ascertainable as an heir, Jerry had no duty to notify Taylor of Jerry’s appointment as administrator of the estate by first-class mail; notification by publication, as allowed in § 43-2-61(2), was sufficient. Accordingly, the probate court did not err when it denied Taylor’s motion insofar as he alleged that the probate court’s earlier orders were void.
Because we find no reversible error, we affirm the probate court’s judgment denying Taylor’s Rule 60(b) motion.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.

. Taylor attached to his motion a January 27, 2011, judgment of the Mobile Juvenile Court determining that Jimmy was Taylor’s father.

. Fidelity and Deposit Company of Maryland served as Jerry's surety while he was the administrator of the estate.

. We note that Taylor's allegations that the challenged probate-court orders are either void or were procured by fraud fall squarely under Rule 60(b)(4) or Rule 60(b)(3); therefore, the allegations cannot also be brought under Rule 60(b)(6). See R.E. Grills, Inc. v. Davison, 641 So.2d 225, 229 (Ala.1994) (“Clause (6), however, is mutually exclusive of the specific grounds of clauses (1) through (5), and a party may not obtain relief under clause (6) if it would have been available under clauses (1) through (5).“).

. A party may bring a Rule 60(b)(3) motion in an existing action, seeking to set aside a judgment or order on the ground of fraud, if that motion is filed within four months of the entry of the judgment or order. Taylor filed his motion well outside that four-month time limitation. However, Taylor’s motion can be considered as initiating an independent action, subject to the time limitations discussed above. See Warren v. Riggins, 484 So.2d 412, 414 (Ala.1986) (holding that a motion filed pursuant to Rule 60(b)(3) may be treated as initiating an independent action when that motion was filed after the four-month time limitation in Rule 60(b)(3)). See also Committee Comments on 1973 Adoption of Rule 60 ("There is little procedural difference between the two methods of attack, and since nomenclature is unimportant, courts have consistently treated a proceeding in form an independent action as if it were a motion, and vice versa, where one but not the other was technically appropriate, and any procedural difference between them was immaterial in the case.’’).

. Section 6-2-3 provides:
"In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action.”

. Motions under Rule 60(b)(4) alleging that a judgment or order is void are not subject to the reasonable-time requirement of Rule 60(b) and can be brought at any time. See Ex parte Full Circle Distrib., L.L.C., 883 So.2d 638, 643 (Ala.2003).